STATE of Wisconsin, Plaintiff-Respondent,

v.

Randy J. GRAHAM, Defendant-Appellant.†

Court of Appeals

*No. 99–1960–CR. Submitted on briefs February 11, 2000.—Decided May 25, 2000.*

## 2000 WI App 138

(Also reported in 614 N.W.2d 504.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Mary E. Waitrovich*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Dykman, P.J., Eich and Vergeront, JJ.

¶ 1. DYKMAN, P.J. Randy J. Graham appeals from a judgment convicting him of theft from a person and from the order denying his motion for postconviction relief. He argues that there was insufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that he took a purse "from the person" of the victim. We disagree and affirm.

## I. Background

¶ 2. Graham was charged with stealing a purse from Judith Bull. At trial, Bull testified that Graham was a friend of her daughter. On January 21, 1998, Bull gave Graham a ride in her car. Bull testified that when she got in the car she put her purse against the car door and put her left leg tight against the purse as she drove, so that the purse could not move. Bull stated that, as she was braking to make a turn, Graham reached over and shifted the car into park. He then

reached behind her seat and released her seat-back, causing her to fall backwards. As Bull fell back, her left leg came free from her purse. Bull testified that Graham quickly turned the ignition off and reached across her body to grab the purse. He then left the car, taking her purse with him.

¶ 3. A jury convicted Graham of theft from a person, contrary to WIS. STAT. § 943.20(1)(a) and (3)(d)2 (1997–98).[1] Graham filed a postconviction motion arguing, among other things, that the evidence presented at trial was insufficient to support his conviction. The trial court denied the motion and Graham appeals.

## II. Analysis

¶ 4. WISCONSIN STAT. § 943.20, the theft statute, provides, in part:

(1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):

(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.

. . . .

(3) PENALTIES. Whoever violates sub. (1):

. . . .

(d) If the value of the property does not exceed $2,500 and any of the following circumstances exist, is guilty of a Class D felony:

. . . .

2. The property is taken from the person of another or from a corpse. . . .

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 5.   Graham argues that there was insufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that he took the purse "from the person" of Bull. He points out that the jury instructions for theft from a person state that a finding that property was taken "from the person" of another "requires that the property was taken from the body of the person in possession of the property." WIS JI—CRIMINAL 1441B. Graham contends that Bull's purse was not touching her body at the time he grabbed it.

¶ 6.   In reviewing the sufficiency of the evidence to support a conviction, we will not substitute our judgment for that of the jury "unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no [jury], acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). If there is any possibility that the jury could have drawn the appropriate inferences from the evidence to support its verdict, we may not overturn that verdict even if we believe that the jury should not have found guilt based on the evidence. *See id.*

¶ 7.   In order to determine whether Bull's testimony was sufficient for a reasonable jury to find that Graham took the purse "from the person" of Bull, we must interpret and apply WIS. STAT. § 943.20(3)(d)2. The interpretation and application of a statute presents a question of law that we review de novo. *See State v. Hughes*, 218 Wis. 2d 538, 543, 582 N.W.2d 49 ( Ct. App. 1998). When we interpret a statute, our purpose is to ascertain the intent of the legislature and give it effect. *See State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177 (Ct. App. 1992). Our first step is to examine the language of the statute

and, absent ambiguity, give the language its ordinary meaning. *See id.* at 225–26. If the language is ambiguous, we examine the scope, history, context, subject matter and purpose of the statute in order to determine the legislative intent. *See id.* at 226. "Statutory language is ambiguous if reasonable people could disagree as to its meaning." *Id.*

¶ 8. In *Hughes*, 218 Wis. 2d at 543, we were also required to interpret and apply WIS. STAT. § 943.20(3)(d)2. Hughes pled guilty to theft from a person, party to a crime, based on a criminal complaint stating that he or an accomplice took the victim's purse from the handle on the back of her wheelchair and fled. *See Hughes*, 218 Wis. 2d at 540. Hughes argued that the complaint provided an insufficient factual basis for his plea because it did not establish that he or his accomplice took the purse "from the person" of the victim. *Id.* We concluded "that theft 'from the person' encompasses the taking of property from the wheelchair of one sitting in the wheelchair at the time of the taking." *Id.* at 548.

¶ 9. In *Hughes*, we held that the words "from the person" in WIS. STAT. § 943.20(3)(d)2 were ambiguous because courts from other jurisdictions had conflicting views of similar laws, some adopting "a narrow view of the connection between victim and property" and some adopting "a broader standard." *Id.* at 541, 544. We reviewed the legislative history of the statute, concluding that it "indicates the legislature's intent to enact a theft from person statute that enhances the penalty for takings that are 'particularly dangerous or undesirable.' " *Id.* at 545 n.7; *see also* 1953 A.B. 100A Comments at 114; Laws of 1953, ch. 623.[2] We declined

[2] As we noted in *Hughes*, the legislature began a complete revision of the Criminal Code in 1950. *State v. Hughes*, 218 Wis.

to adopt a narrow or broad standard from another jurisdiction, and instead based our holding on the specific facts of the case. *See Hughes*, 218 Wis. 2d at 542, 548 n.10. We decided that taking property from a wheelchair in which the victim is sitting was the type of "particularly dangerous or undesirable" crime for which the legislature sought to provide an enhanced penalty with the theft from a person statute. *Id.* at 545–46.

¶ 10. In this case, we conclude that there was sufficient evidence to allow a reasonable jury to find beyond a reasonable doubt that Graham took the purse "from the person" of Bull. Based on Bull's testimony, a jury could conclude that the purse was touching Bull's leg until Graham released her seat and caused her to fall backwards. Graham's act of releasing the seat separated Bull's leg from the purse, allowing him to grab it and flee. Taking a victim's purse by causing her to fall backwards in the driver's seat of a car, thus breaking her hold on the purse, is the type of "particularly dangerous or undesirable" action to which the theft from a person statute should apply.

■

¶ 11. Graham contends that we should interpret WIS. STAT. § 943.20(3)(d)2 narrowly so as to include only instances in which the item taken was touching the victim's body. However, as in *Hughes*, we need not adopt a broad or narrow interpretation of "from the

2d 538, 545 n.7, 582 N.W.2d 49 (Ct. App. 1998). 1953 Assembly Bill 100A died before resulting in a new code. *See id.* In 1955, a new code was adopted, resulting in the language of the present WIS. STAT. § 943.20. *See id.* The 1955 code did not have legislative comments, but the comments to 1953 Assembly Bill 100A provide insight into the language contained in the 1955 code. *See id.*

person." Bull's purse was touching her leg before Graham took it. The nature of the crime is not altered by the fact that Graham took Bull's purse in two steps: first causing her to fall backwards and then grabbing the dislodged purse. Whether Graham took the purse from Graham's person or moved Graham's person in order to take the purse, his actions separated the purse from the person and constituted the type of theft for which § 943.20(3)(d)2 was created. We do not agree that Graham's "taking" of the purse was limited to the precise instant in which he grabbed it.

*By the Court.*—Judgment and order affirmed.