STATE of Wisconsin, Plaintiff-Respondent,

v.

Cleveland R. TIDWELL, Defendant-Appellant.†

Court of Appeals

*No. 2008AP2846–CR. Submitted on briefs June 25, 2009.*
*—Decided September 9, 2009.*

2009 WI App 153

(Also reported in 774 N.W.2d 650.)

† Petition to Review denied 1/14/10.

596

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeremy C. Perri*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. This is an appeal from a judgment of conviction from the Kenosha county circuit court finding Cleveland R. Tidwell guilty of attempted theft from the person of another contrary to WIS. STAT. § 939.32 (2007–08).[1] This court affirms the decision of the circuit court.

¶ 2. On March 3, 2007, at 5:00 a.m., Tidwell entered the Marina Gardens Restaurant, walked to the counter where the cash register was placed, and told Star Rondeau, the manager and lone employee behind the counter, to "[g]ive me the money." At first, Tidwell demanded the money in a soft voice. Rondeau, thinking that Tidwell was joking, responded by telling Tidwell to "[g]et out of here." Tidwell became angry, smashing a fist on the fax machine[2] next to the cash register and repeated, "Give me the money." Then, Tidwell grabbed the fax machine and tried to take it. Rondeau grabbed the fax machine and a brief tug-of-war ensued.

¶ 3. Tidwell, realizing he did not have hold of the cash register, let go of the fax machine and began smashing the cash register with both of his fists, again demanding Rondeau give him the money. Rondeau began to yell for help. Two on-duty Kenosha police officers were there having a meal and ran to Rondeau's

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[2] Both the fax machine and cash register received so much damage from the force of the blows that they had to be replaced.

aid. When Tidwell noticed the officers, he ran outside but was apprehended by the officers.

¶ 4. All in all, Tidwell repeated the phrase "[g]ive me the money," seven or eight times, each time becoming louder and louder. Tidwell was hitting the cash register so hard that buttons broke off. The counter where the cash register was placed contained only one exit and was very narrow. In fact, Rondeau was within arms reach of Tidwell during the attempted robbery. Rondeau was the manager on duty, responsible for collecting money from the receipts and supervising the restaurant.

■■

¶ 5. The issue on appeal is whether the State presented sufficient evidence for the jury to find Tidwell guilty of attempted theft from the person of another beyond a reasonable doubt. *See* WIS. STAT. § 939.32. The standard of review in sufficiency of the evidence cases is "whether the evidence, viewed in the light most favorable to the state, is so insufficient in probative value and force that as a matter of law no reasonable jury could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 500, 451 N.W.2d 752 (1990). "If there is any possibility that the jury could have drawn the appropriate inferences from the evidence to support its verdict, we may not overturn that verdict even if we believe that the jury should not have found guilt based on the evidence." *State v. Graham*, 2000 WI App 138, ¶ 6, 237 Wis. 2d 620, 614 N.W.2d 504 (citing *Poellinger*, 153 Wis. 2d at 507).

¶ 6. Tidwell makes two arguments in support of his insufficient evidence claim. First, the specific facts of the attempted theft are not "circumstances which made stealing particularly dangerous and undesirable."

*See State v. Hughes*, 218 Wis. 2d 538, 545, 582 N.W.2d 49 (Ct. App. 1998). Second, unlike other theft from person cases, the property Tidwell was attempting to steal was not connected in any way to the victim's person. In order to weigh the merit of Tidwell's arguments, we must interpret and apply Wis. Stat. § 943.20(3)(e). The interpretation and application of a statute presents a question of law that we review de novo. *Frisch v. Henrichs*, 2007 WI 102, ¶ 29, 304 Wis. 2d 1, 736 N.W.2d 85.

¶ 7. Wisconsin Stat. § 943.20 provides, in part:

**Theft. (1)** Acts. Whoever does any of the following may be penalized as provided in sub. (3):

(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.

. . . .

**(3)** Penalties. Whoever violates sub. (1):

. . . .

(e) If the property is taken from the person of another or from a corpse, is guilty of a Class G felony.

¶ 8. In *Hughes*, 218 Wis. 2d at 548 n.10, we declined to adopt a broad or narrow standard when interpreting the term "from the person" in Wis. Stat. § 943.20(3)(e).[3] Instead, we decided to look at the specific facts of the case. *Hughes*, 218 Wis. 2d at 548 n.10.

[3] In 2001, the legislature renumbered and amended Wis. Stat. § 943.20(3)(d)2. as § 943.20(3)(e). 2001 Wis. Act 109, § 730.

In reviewing the legislative history of the theft statute, we concluded the intent of the "from the person" penalty enhancer was to "cove[r] circumstances which made stealing particularly dangerous and undesirable." *Id.* at 545. Hughes, who took the victim's purse off the handle of her wheelchair, was found to have committed a particularly dangerous and undesirable theft which the legislature would have had in mind while creating the enhanced penalty of theft from the person. *Id.* at 547–48.

¶ 9. Again, in *Graham*, 237 Wis. 2d 620, ¶ 11, we declined to adopt a broad or narrow standard in interpretation of "from the person," and decided the case on specific circumstances of the crime. Graham, who was a passenger in the victim's vehicle at the time of the theft, shifted the victim's car into park as it was driving. *Id.*, ¶ 2. Then, Graham reached behind the victim's seat and pulled the seat-back release lever causing his victim to fall backward, separating her body from her purse. *Id.* We held that the "two step" nature of Graham's theft, separating the victim from her purse, then taking the purse, was the type of "particularly dangerous and undesirable" action to which theft from a person should apply.[4] *Id.*, ¶¶ 10–11.

¶ 10. In the case at bar, Tidwell contends that the facts of this case are not "circumstances which made stealing particularly dangerous and undesirable." *Hughes*, 218 Wis. 2d at 545. We disagree. Here, Tidwell approached Rondeau while she was behind the cash register counter and demanded money. The counter was very narrow and had only one entrance which was blocked by Tidwell, leaving Rondeau trapped in a small

---

[4] Furthermore, we declined to limit "taking" to the precise moment in which the purse was grabbed. *State v. Graham*, 2000 WI App 138, ¶ 11, 237 Wis. 2d 620, 614 N.W.2d 504.

area within arms reach of Tidwell. When Rondeau did not immediately give Tidwell the money, he began smashing the fax machine and cash register with his fists, becoming louder and louder in his demands for the money.

¶ 11. Tidwell even tried to grab the fax machine and a brief tug of war ensued between he and Rondeau before it was released. These actions caused Rondeau to be legitimately "upset; shaking and scared." Tidwell's actions, the shouting, the grabbing of the fax machine, and the pounding on the fax machine and cash register, are "the type of 'particularly dangerous and undesirable' actions to which theft from the person should apply." *See Graham*, 237 Wis. 2d 620, ¶ 10. We conclude that there is sufficient evidence to allow a reasonable jury to find beyond a reasonable doubt that Tidwell was guilty of theft "from the person."

¶ 12. In addition, Tidwell argues that, unlike other theft from the person cases, the property he was attempting to steal was not connected to Rondeau and, therefore, should not constitute theft from the person. We are not persuaded. At the time of the attempted theft, Rondeau was within arms reach of Tidwell. While Tidwell was smashing the cash register, his hands were "right next to [Rondeau] practically." Her duties as manager charged her with the supervision of that money.[5] Rondeau was in constructive possession[6] of the money

---

[5] In fact, the owner, George Piliouras, testified that when he was not around, Rondeau had "authority to stand in [his] shoes and operate the business."

[6] Constructive possession is defined as control or dominion over a property without actual possession or custody of it. BLACK'S LAW DICTIONARY 1201–02 (8th ed. 1999).

when the attempted theft occurred even if the money was not physically touching her person. Rondeau's constructive possession of the money makes this a "particularly dangerous and undesirable" theft.

¶ 13. For the reasons stated above, this court affirms the judgment of conviction finding Tidwell guilty of theft from the person of another.

*By the Court.*—Judgment affirmed.