VILLAGE OF CROSS PLAINS,
Plaintiff-Appellant,

v.

Kristin J. HAANSTAD,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2004AP2232. Oral argument January 11, 2006.
—Decided February 14, 2006.*

2006 WI 16

(Also reported in 709 N.W.2d 447.)

For the defendant-respondent-petitioner, there were briefs by *John M. Gerlach* and *Larowe, Gerlach & Roy, LLP,* Madison, and oral argument by *John M. Gerlach.*

For the plaintiff-appellant, there was a brief by *Kenneth B. Axe, Paul A. Johnson, Frank C. Sutherland,* and *Lathrop & Clark, LLP,* Village of Cross Plains, and oral argument by *Kenneth B. Axe.*

¶ 1. LOUIS B. BUTLER, JR., J. Kristin J. Haanstad seeks review of a decision by the court of appeals reversing the decision of the Dane County Circuit Court, the Honorable Diane M. Nicks, that concluded that Haanstad was not operating a motor vehicle while either under the influence of an intoxicant under Wis. Stat. § 346.63(1)(a) or with a prohibited alcohol concentration under Wis. Stat. § 346.63(1)(b)(2003–04).[1] The circuit court, following a court trial, concluded that sitting in the driver's seat of a running, parked motor vehicle, without more, was not operating a motor vehicle under § 346.63, and found Haanstad not guilty. The court of appeals reversed, concluding that Haanstad was operating a motor vehicle pursuant to § 346.63 when she was found sitting behind the wheel of a running vehicle. *Village of Cross Plains v. Haanstad,* No. 2004AP2232, unpublished slip op. (Wis. Ct. App. May 12, 2005).

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 2. Haanstad asks this court to reverse the court of appeals decision because no evidence was presented that she physically activated or manipulated the controls of the car, as required by Wis. Stat. § 346.63(3)(b).[2] We agree and conclude that Haanstad was not operating a motor vehicle as defined under that section. We therefore reverse the court of appeals.

I

¶ 3. The following facts are undisputed. On May 25, 2003, Kristin Haanstad met Timothy Satterthwaite at a bar around 7 p.m. While at the bar, Haanstad consumed alcoholic beverages. Sometime between 11:30 p.m. and 12:00 a.m., Haanstad gave Satterthwaite the keys to her Cavalier and Satterthwaite drove her and Justin Cushman to Baer Park in the Village of Cross Plains where Satterthwaite had left his Blazer. Haanstad sat in the passenger seat and Cushman sat in the back seat.

¶ 4. Satterthwaite parked the Cavalier on the left side of the Blazer. Leaving the vehicle running and the headlights on, Satterthwaite left the Cavalier and helped Cushman into his Blazer. While Satterthwaite was between the two vehicles, Haanstad slid over from the passenger's seat into the driver's seat, with her body and her feet facing the passenger seat, allowing Satterthwaite to enter her car at the front passenger door so they could discuss their relationship. Satterthwaite entered the car through the passenger-side door and sat in the passenger seat with Haanstad's feet and body pointing towards him.

---

[2] Haanstad was not charged with driving, so that Wis. Stat. § 346.63(3)(a) is not implicated in this case.

¶ 5. At approximately 12:30 a.m. on May 26, 2003, Village of Cross Plains Police Officer Gregory Kosharek, while on duty, approached the two vehicles parked in the parking lot of Baer Park. Officer Kosharek approached the Cavalier on the driver's side, and observed Haanstad sitting in the driver's seat of the Cavalier. Satterthwaite was observed sitting in the passenger's seat. Satterthwaite and Haanstad had been talking for less than ten minutes before Officer Kosharek approached the Cavalier.

¶ 6. Satterthwaite exited the vehicle and met Officer Kosharek at the rear end of the Cavalier. When Kosharek returned to the driver's side to speak with Haanstad, he observed that her eyes were bloodshot and watery, her face was flushed, and a distinct odor of intoxicants emanated when she spoke. Haanstad admitted she had been drinking at a bar and that her last drink was about 30 minutes earlier.

¶ 7. Kosharek returned to the rear of the Cavalier to speak further with Satterthwaite, who stated that he and Haanstad had been discussing their relationship in the car. Satterthwaite then told Kosharek that a male passenger, Cushman, was in the Blazer parked next to the Cavalier.

¶ 8. Officer Kosharek walked over to the Blazer to speak with Cushman. Cushman told Kosharek that Satterthwaite was going to drive him home after speaking with Haanstad. Kosharek then returned to Haanstad and asked her to perform field sobriety tests. Although Haanstad informed Officer Kosharek that she had not been driving the vehicle, Kosharek placed Haanstad under arrest for operating while under the influence of an intoxicant and operating with a prohibited alcohol concentration.

## II

¶ 9. Whether Haanstad was operating a motor vehicle while under the influence of an intoxicant under Wis. Stat. § 346.63(1)(a), or with a prohibited alcohol concentration under Wis. Stat. § 346.63(1)(b), involves an application of these statutes to undisputed facts. Statutory interpretation is a question of law reviewed de novo. *State v. Stenklyft,* 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769. The purpose of statutory interpretation is to give the statute its "full, proper, and intended effect." *State ex. rel Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the statute's language because it is assumed that the legislature's intent is expressed in the words it used. *Id.,* ¶ 45. When statutory language includes technical or specially-defined words or phrases [they] are given their technical or special definitional meaning." *Id.* (citation omitted). If the meaning of the statute is plain, the court ordinarily stops its inquiry. *Id.* (citation omitted). "The presence of different 'plain meaning' interpretations by lawyers or judges does not authorize the court to skip this process, assume ambiguity, and begin searching for extrinsic sources of legislative intent." *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 21, 260 Wis. 2d 633, 660 N.W.2d 656. Instead, the court examines the language of the statute or ordinance "to determine whether 'well-informed persons' *should have* become confused." *Id.* (emphasis in original, citation and quotations omitted).

## III

¶ 10. Haanstad was charged with operating a motor vehicle while under the influence of an intoxicant under Wis. Stat. § 346.63(1)(a) and with a prohibited

blood alcohol concentration under Wis. Stat. § 346.63(1)(b). At trial, Haanstad testified that she did nothing more than sit in the driver's seat with her feet and body facing the passenger seat, never touching or manipulating the gas pedal, steering wheel, or the keys which were in the ignition, or any of the other controls of the car. The Village of Cross Plains ("Village") presented no testimony to the contrary. That evidence was uncontroverted.

¶ 11. Nonetheless, the Village asserted that the mere fact that Haanstad positioned her body in the driver's seat behind the wheel meant that she was restraining the vehicle which, the Village contends, falls within the definition of "operate" under *County of Milwaukee v. Proegler*, 95 Wis. 2d 614, 291 N.W.2d 608 (Ct. App. 1980).

¶ 12. The circuit court disagreed with the Village. The court reasoned that "operate" as defined requires some affirmative act of control on the part of the defendant. The court concluded that the words "the physical manipulation or activation of the controls" could not be read out of Wis. Stat. § 346.63(3)(b). The court therefore found Haanstad not guilty of the violations.

¶ 13. The court of appeals reversed. The court concluded that although Haanstad "did not physically manipulate or activate any of the controls necessary to put the vehicle in motion," she was operating the motor vehicle within the meaning of the statute as interpreted by *Proegler. Haanstad,* No. 2004AP2232, unpublished slip op., ¶ 20.

A

¶ 14. We begin by examining the plain meaning of the statute. Haanstad was charged with operating a

579

motor vehicle while intoxicated and operating with a prohibited alcohol concentration. The statutes state, in relevant part:

> (1) No person may drive or operate a motor vehicle while:

> (a) Under the influence of an intoxicant, a controlled substance, a controlled substance analog or any combination of an intoxicant, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving; or

> . . . .

> (b) The person has a prohibited alcohol concentration.

Wis. Stat. § 346.63(1)(a) & (b).

¶ 15. The term "operate" is defined in § 346.63(3)(b), which reads: " 'Operate' " means the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion."

¶ 16. The court of appeals' conclusion directly contradicts the plain meaning of the statute. According to the explicit words of the statute, in order to "operate" a motor vehicle, the statute requires that the person physically manipulate or activate any of the controls of the motor vehicle necessary to put it in motion. The Village does not dispute, and the court of appeals concluded, that Haanstad never physically manipulated or activated any of the vehicle's controls. She did not turn on or turn off the ignition of the car. She did not touch the ignition key, the gas pedal, the brake, or any other controls of the vehicle. Haanstad simply sat in the

580

driver's seat with her feet and body pointed towards the passenger seat. Haanstad did not "operate" a motor vehicle under the statute's plain meaning.

## B

¶ 17. In addition to drawing a conclusion that directly contradicts the plain meaning of the statute, the court of appeals' reliance on *Proegler* is misplaced. In *Proegler*, officers found the defendant sleeping alone behind the wheel of his pickup truck, which was parked partially on the right emergency ramp of I-43. *Proegler*, 95 Wis. 2d at 618. "The keys were in the ignition; the motor was running; the lights and heater were on." *Id.* The transmission gear was in the "park" position. *Id.* "The defendant testified that he had driven to the spot where the officers found his truck, stopped there without completely pulling off the highway, left the motor running and the lights on, and then fell asleep." *Id.* at 628.

¶ 18. The Village relies on language in *Proegler* that the prohibition against "activation" "applies either to turning on the ignition or leaving the motor running while the vehicle is in 'park.' " *Id.* at 626. That language is taken out of context, however, and must be viewed in light of the sentences that immediately follow:

> The prohibition against the "activation of any of the controls of a motor vehicle necessary to put it in motion" applies either to turning on the ignition or leaving the motor running while the vehicle is in "park." One who enters a vehicle while intoxicated, and does nothing more than start the engine is as much of a threat to himself and the public as one who actually drives while intoxicated. The hazard always exists that the car may be caused to move accidentally, or that the one who starts the car may decide to drive it. . . .

*Id.*

¶ 19. In other words, the *Proegler* court dealt with facts where there was no question that the defendant had started the engine, thereby "activating" the controls necessary to put the vehicle in motion. The real issue in *Proegler* was whether the statute should be interpreted to penalize one who, having already started the engine, has the "brains to get off the road." *Id.* at 626–27.

¶ 20. The court of appeals in *Proegler* also relied on the fact that there existed circumstantial evidence sufficient to substantiate that the defendant "operated" his truck within the meaning of the statute: the defendant was alone in his vehicle and he admitted to driving the vehicle to its parking spot and leaving it running. *Id.* Relying on cases from other jurisdictions, the court of appeals stated that, although at the time of apprehension the defendant exercised "no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that the defendant had of his choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run." *Id.* at 627 (quoting *State v. Webb,* 274 P.2d 338, 340 (Ariz. 1954) (which involved a statute that prohibited the actual physical control of a car while under the influence of intoxicating liquor)). The court of appeals upheld the trial court's determination that the defendant had "operated" the vehicle within the meaning of the statute,[3] finding that the defendant had "actual physical control" of the vehicle, even though the vehicle remained motionless. *Id.* at 628. The court ultimately concluded that " '[o]peration' of a vehicle occurs either when a defendant starts the motor and/or leaves it running." *Id.* at 628–29.

---

[3] The relevant statutory language remains unchanged from the 1980 version of Wis. Stat. § 346.63(3).

¶ 21. In contrast, the evidence here is undisputed that Haanstad did not drive the car to the point where the officer found her behind the wheel. Further, there is no evidence that the defendant "activated" or "manipulated" any control in the vehicle that is necessary to put the vehicle in motion. The Village offered no circumstantial evidence to prove that Haanstad had operated the vehicle. The Village does not contest that Satterthwaite was the individual who "operated" the vehicle by driving it, placing it in park, and leaving the motor running. The Village does not claim that Haanstad drove or even touched the controls of the vehicle at any time while she was intoxicated. There is no dispute: Haanstad never touched the controls of the vehicle. As the circuit court judge so aptly stated, "if she is guilty, she is guilty of sitting while intoxicated."

¶ 22. In *Burg v. Cincinnati Cas. Ins. Co.*, 2002 WI 76, 254 Wis. 2d 36, 645 N.W.2d 880, this court examined the meaning of the term "operate" in Wis. Stat. § 350.09(9r) for purposes of the head and tail lamp illumination requirement of § 350.09(1). Section 350.01(9r), like Wis. Stat. § 346.63(3)(b), defines "operate" in part as *"physical manipulation or activation of any of the controls* of a snowmobile *necessary to put it in motion."* § 350.01(9r) (emphasis added).[4] *Compare* Wis. Stat. § 346.63 (3)(b). This court concluded that at the time of the accident, the defendant in *Burg* was not "operating" his snowmobile. *Burg,* 254 Wis. 2d 36,

_____

[4] "Operate" is also defined in Wis. Stat. § 350.01(9r) as the exercise of physical control over the speed or direction of a snowmobile. That portion of the definition is not contained in the OWI and refusal statutes, which define drive or operate separately, and is therefore not pertinent to this case. *See Burg v. Cincinnati Cas. Ins. Co.,* 2002 WI 76, ¶ 20 n.6, 254 Wis. 2d 36, 645 N.W.2d 880.

¶¶ 22, 29. The court reasoned that operating under § 350.09 does not include the act of sitting on a parked snowmobile with the engine off. *Id.* While physical manipulation or activation of the controls necessary to put a snowmobile in motion does not necessarily require the snowmobile to actually be in motion,[5] it does plainly require some affirmative physical act of manipulation or activation of the controls necessary to put it in motion. *Id.,* ¶ 22. "Sitting on a parked snowmobile with its engine off is not, without more, the 'manipulation or activation' [] necessary to put it in motion." *Id.*

¶ 23. In the present case, Haanstad was merely sitting in the driver's seat of a parked vehicle. Although the engine was running, the uncontested evidence shows that Haanstad was not the person who left the engine running. She never physically manipulated or activated the controls necessary to put the vehicle in motion. In addition, the present case is distinguishable from *Proegler,* as there is no circumstantial evidence that Haanstad "recently" operated the vehicle. In contrast, there is uncontested evidence demonstrating that Haanstad never touched the driving controls while sitting in the driver's seat, and that Satterthwaite was the individual who recently operated the vehicle.

¶ 24. We therefore conclude that because there exists no evidence, direct or circumstantial, that Haanstad touched any controls of the vehicle necessary to put it in motion while she was intoxicated, neither

---

[5] *See also State v. Modory,* 204 Wis. 2d 538, 544, 555 N.W.2d 399 (Ct. App. 1996) (where the court of appeals interpreting Wis. Stat. § 346.63(3) held that the immobility of the vehicle was immaterial, because the physical manipulation or activation of the controls for purposes of the definition of "operate" did not necessarily require that the vehicle be moving).

*Proegler* nor *Burg* supports a conclusion that Haanstad was "operating" the motor vehicle as defined in Wis. Stat. § 346.63(3)(b).

## IV

¶ 25. We conclude that Haanstad did not "operate" the motor vehicle as defined in Wis. Stat. § 346.63(3)(b). We also find that this conclusion is consistent with prior Wisconsin cases. We therefore reverse the court of appeals and reinstate the circuit court's finding of not guilty.

*By the Court.*— The decision of the court of appeals is reversed.

¶ 26. JON P. WILCOX, J., took no part.