STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael G. MERTES, Defendant-Appellant.†

Court of Appeals

*No. 2007AP2757–CR. Submitted on briefs October 8, 2008.
—Decided November 26, 2008.*

2008 WI App 179

(Also reported in 762 N.W.2d 813.)

† Petition to review denied 3/17/09.

756

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrea Taylor Cornwall*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William L. Gansner*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Anderson, P.J., and Neubauer, J.

¶ 1. NEUBAUER, J. Michael G. Mertes appeals from judgments of conviction for operating after revocation (OAR), first offense, and operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood (OWRCS), fifth and subsequent offense. Mertes argues that the evidence at trial was insufficient to establish either that he had operated the vehicle or that he had operated the vehicle on a highway after the revocation of his driving privileges. Viewing the evidence in a light most favorable to the verdict, we conclude that there was sufficient circumstantial evidence upon which the jury could determine that Mertes had operated the vehicle and had done so on a highway. We affirm the judgments.

## BACKGROUND

¶ 2. The facts underlying Mertes' convictions were adduced at trial. On October 8, 2006, at 3:25 a.m., Officer Jeremiah Johnson of the City of New Berlin

Police Department responded to a report of two individuals "passed out" or asleep inside a vehicle at the gas pumps at the Speedway gas station. When Johnson arrived, he observed a vehicle parked right next to a gas pump. The engine of the vehicle was off; however, its yellow parking lights and interior dash lights were on.

¶ 3. Another officer, Officer David Rocklewitz, also responded to the call. When Rocklewitz and Johnson approached the vehicle they discovered two male subjects both asleep in the front seats of the vehicle. Johnson approached the driver's side of the vehicle while Rocklewitz approached the passenger side. Johnson attempted to wake the men by knocking on the window. After a few moments, the person on the driver's side, later identified as Mertes, woke up and opened the car door. Because the door chime was going off, Mertes turned the key in the ignition and removed it. Johnson inferred that the key had been in the "auxillary position" or the "accessory position" prior to Mertes removing them.[1] Rocklewitz also made multiple attempts before successfully awakening the passenger in the vehicle, who was "pretty incoherent" and seemed "disoriented and confused."

¶ 4. Mertes identified himself and Johnson proceeded to ask him questions. Mertes indicated that he was coming from Milwaukee and was heading back toward Milwaukee. Mertes was not able to give a reason for being in his vehicle nor was he able to tell Johnson exactly how long he had been there; however, Mertes estimated that he had been parked there for "approximately ten minutes."

---

[1] Johnson conceded that he could not actually see the key in the ignition. However, he testified: "I watched his hands go on to the area of the keys, heard him turn the keys, [door] chimes go off, lights go off, he pulls the keys out. I see the keys in his hand."

¶ 5. While Johnson was talking to Mertes he noted an odor of intoxicants and that Mertes' eyes were red and glassy. Johnson asked Mertes to perform field sobriety testing. Based on Mertes' performance, Johnson placed Mertes under arrest for OWI. Although when questioned at trial Johnson did not recall Mertes telling him that he had not driven the vehicle, Johnson's notes from the night of the incident indicate that after reading Mertes his *Miranda*[2] rights, Johnson asked Mertes if he had been operating a motor vehicle; Mertes responded no. Mertes was issued citations for OWI, fifth and subsequent offense, contrary to Wis. Stat. § 346.63(1)(a) (2005–06);[3] OAR, contrary to Wis. Stat. § 343.44(1)(b); and operating a motor vehicle with a prohibited blood alcohol concentration (PAC) contrary to Wis. Stat. § 346.63(1)(b).

¶ 6. After requesting a jury trial, Mertes filed a motion in limine on the issue of "operation of a motor vehicle." Mertes requested an order prohibiting the State from offering evidence or testimony as to the "position and location of the vehicle keys at the time the law enforcement officers had contact with [Mertes]." Mertes argued that the jury could "incorrectly conclude that operation includes such positioning of the ignition." The trial court declined to rule on the motion until after hearing the evidence presented.

¶ 7. Prior to trial, the State filed a third amended information alleging OWRCS, seventh offense; OAR, first offense; and PAC, seventh offense.[4] The parties entered into a stipulation regarding the timing and

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[4] On January 29, 2007, the State filed a Second Amended Information alleging one count of operating with a detectable

results of the blood testing so as to focus the issue at trial on whether Mertes had "operated" a motor vehicle. The matter proceeded to a jury trial on May 1, 2007.

¶ 8. Officers Johnson and Rocklewitz and the clerk from the gas station testified at trial. None had seen who inserted the keys into the ignition of the car nor had they seen Mertes pull into the gas station. Rocklewitz testified that he was not aware of any witness that had seen Mertes pull into the gas station or otherwise move the vehicle in any way. At the close of evidence, Mertes moved for a directed verdict pointing to the lack of testimony that put Mertes behind the wheel driving. The State opposed the motion on the grounds that the jury could reasonably infer that Mertes had been driving given that he was behind the wheel, the dash and parking lights were on, the keys were in the auxiliary position, and he had provided Johnson with responses as to where he had come from and where he was headed. The trial court agreed with the State and denied the motion. The jury found Mertes guilty of all three counts. Mertes was convicted of OWRCS and OAR. *See* Wɪs. Stat. § 346.63(1)(c).

¶ 9. Mertes appeals.

### DISCUSSION

■■

¶ 10. In reviewing the sufficiency of the evidence to support a conviction in circumstantial evidence

---

amount of restricted controlled substance in blood, fifth offense, contrary to Wɪs. Stat. §§ 346.63(1)(am), 346.65(2)(e) (2003–04), and 939.50(3)(h); OAR, first offense; and operating with a PAC of .02 or more, fifth and subsequent offense. The earlier informations had not included the charge of "operating with a detectable amount of restricted controlled substance in blood." This charge resulted from a lab report submitted to the State on January 11, 2007.

cases, we may not substitute our judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Therefore, if more than one reasonable inference can be drawn from the evidence, we must adopt the inference that supports the verdict. *Id.* at 506–07.

¶ 11. A conviction may be supported solely by circumstantial evidence, and in some cases, circumstantial evidence may be stronger and more satisfactory than direct evidence. *Id.* at 501–02. Although a special jury instruction is often used when circumstantial evidence is relied upon, on appeal the standard of review is the same whether the conviction relies upon direct or circumstantial evidence. *Id.* at 502–503. Once the jury accepts the theory of guilt, an appellate court need only decide whether the evidence supporting that theory is sufficient to sustain the verdict. *Id.* at 507–08.

¶ 12. On appeal, Mertes challenges both of his convictions. First, Mertes argues that there is insufficient evidence to support the jury's finding that he "operated" the vehicle with a detectable amount of controlled substance in his blood as required by WIS. STAT. § 346.63. Second, Mertes argues that there was insufficient evidence to support the jury's finding that, if he had operated the vehicle, he had done so on a "highway" with a revoked license as required by WIS. STAT. § 343.44(1)(b).

¶ 13. WISCONSIN STAT. § 346.63(3)(b) defines "operate" as "the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion." Mertes' argument focuses almost exclusively on

the definition of "operation" under Wıs. Stat. § 346.63 and whether Mertes' presence in the driver's seat of the vehicle with the engine off but with the keys in the ignition is sufficient to prove "operation." Mertes' argument misses the mark. The issue is not whether Mertes was operating the vehicle at the moment the police approached him, but rather whether there was enough circumstantial evidence to prove that he drove the car to the gas station.[5]

¶ 14. "Circumstantial evidence is evidence from which a jury may logically find other facts according to common knowledge and experience." Wıs JI—Criminal 170. Here, the State's case was built on circumstantial evidence—or, as the State characterizes it, "the entirely reasonable inference that Mertes had operated the car before the police ever arrived on the scene by driving it

---

[5] We therefore reject Mertes' reliance on the supreme court's decision in *Village of Cross Plains v. Haanstad*, 2006 WI 16, 288 Wis. 2d 573, 709 N.W.2d 447. There, the uncontroverted evidence was that the defendant "did nothing more than sit in the driver's seat with her feet and body facing the passenger seat, never touching or manipulating the . . . controls of the car." *Id.*, ¶ 10. The supreme court held that the defendant was not "operating" a motor vehicle as defined in Wıs. Stat. § 346.63(3)(b). *Haanstad*, 288 Wis. 2d 573, ¶ 2. In relying on *Haanstad*, Mertes points to the fact that, as in his case, there was no evidence in *Haanstad* that the defendant had driven the car to where it was found. However, Mertes overlooks that there was undisputed evidence in *Haanstad* that someone else had driven the vehicle to that spot. *See id.*, ¶¶ 3–4. The *Haanstad* court observed: "[T]he evidence here is undisputed that [the defendant] did not drive the car to the point where the officer found her behind the wheel . . . . The Village offered no circumstantial evidence to prove that [the defendant] had operated the vehicle." *Id.*, ¶ 21. Thus, Mertes' reliance on *Haanstad* is misplaced.

into the gas station." The circumstantial evidence underlying the State's theory included: (1) Mertes sitting behind the wheel of a vehicle parked at a gas pump with the keys in the ignition in the auxiliary position, (2) his statement that he had been there for approximately ten minutes, (3) his statement that he had come from Milwaukee and was headed back to Milwaukee, and (4) the lack of any evidence to suggest that the passenger (or any other specifically identified individual) had operated the vehicle—indeed Rocklewitz testified that the passenger in the vehicle was incoherent and unable to remain awake. As the State aptly points out, "Vehicles do not simply materialize next to gas pumps at filling stations. They are driven to such locations."

¶ 15. We recognized the use of circumstantial evidence to prove "operation" of a motor vehicle in *Milwaukee County v. Proegler*, 95 Wis. 2d 614, 628, 291 N.W.2d 608 (Ct. App. 1980). Mertes relies on *Proegler* for its holding that the " '[o]peration' of a vehicle occurs either when a defendant starts the motor and/or leaves it running." *Id.* at 628–29. Mertes argues that because the motor of his vehicle was not started or running, he could not be found to have operated it. We disagree. The defendant in *Proegler* was found to have "operated" a motor vehicle after being found asleep behind the wheel of a vehicle with the motor running. While the court's discussion focused on the running motor, the *Proegler* court added:

> [W]e agree with the trial court's finding that the circumstantial evidence in this case was sufficient to substantiate the fact that defendant "operated" his truck within the meaning of [Wis. Stat. §] 346.63. The defendant testified that he had driven to the spot where the officers found his truck, stopped there without

completely pulling off the highway, left the motor running and the lights on, and then fell asleep.

*Proegler*, 95 Wis. 2d at 628. The court cited with approval another case involving a similar fact pattern wherein the court held, "the troopers who found [the defendant] 'could reasonably infer that the car was where it was and was performing as it was because of [the defendant's] choice . . . .' " *Id.* (citing *Commonwealth v. Kloch*, 327 A.2d 375, 384 (Pa. Super. 1974)).

¶ 16. While the motor in this case was not running, the keys were in the ignition, the parking and dash lights were on. We believe that even absent a running motor, the jury was entitled to consider the circumstantial evidence in this case to determine how and when the car arrived where it did and whether it was Mertes who operated it. Indeed, the supreme court contemplated the potential for such a case in *Burg ex rel. Weichert v. Cincinnati Casualty Insurance Co.*, 2002 WI 76, 254 Wis. 2d 36, 645 N.W.2d 880. There, the court observed, " '[O]peration' for purposes of the drunk driving laws can be proved circumstantially. A defendant found intoxicated behind the wheel of a parked car with its engine off but still warm might well be prosecuted on that circumstantial evidence of recent 'operation.' " *Id.*, ¶ 27 n.8.

¶ 17. Circumstantial evidence of recent operation is exactly what the State relied on in this case. The State's theory at trial was that the individual who drove the vehicle to the gas station was the individual found behind the wheel of the car—Mertes. The State relied on circumstantial evidence—the presence of the vehicle at the gas station, Mertes' presence behind the wheel, his responses during questioning, the unlikelihood of the passenger's ability to have operated the vehicle due

to his incoherent condition and the absence of any evidence that the passenger was the driver. The jury accepted the State's theory of guilt—that it was Mertes who drove the car to the gas station. Our review on appeal is whether the evidence supporting its theory is sufficient to sustain the verdict. *Poellinger*, 153 Wis. 2d at 508. We conclude that it is.

¶ 18. Mertes additionally argues that there is insufficient evidence to prove that, if he did operate the vehicle, he did so on a "highway." WISCONSIN STAT. § 343.44(1)(b), which governs the criminal offense of operating with a revoked license requires proof of three elements: (1) the defendant operated a motor vehicle on a highway, (2) the defendant's operating privileges were revoked at the time, and (3) the defendant knew that his or her operating privileges had been revoked. WIS JI—CRIMINAL 2621. Prior to trial, Mertes stipulated to the second and third elements, therefore, the State was required to prove only that Mertes operated a motor vehicle on a "highway."[6]

¶ 19. Mertes' argument on appeal is limited to whether a gas station parking lot qualifies as a "highway." He does not dispute, and could not dispute, that the roads leading to the gas station are indeed "highways" as defined by WIS. STAT. § 340.01(22).[7] Having concluded that the circumstantial evidence was suffi-

---

[6] The parties' stipulation states: "That Mr. Mertes' driving privileges were revoked on October 8, 2006[,] and that he was aware his driving privileges were revoked."

A "highway" is defined by WIS. STAT. § 340.01(22) as "all public ways and thoroughfares and bridges on the same."

[7] Officer Johnson testified that the Speedway gas station is on the corner of Moorland and Beloit Road in the City of New Berlin.

cient to support the jury's verdict that Mertes operated a motor vehicle, we likewise conclude that the same evidence is sufficient to support a finding that he had done so on a highway prior to arriving at the gas station.

## CONCLUSION

¶ 20. We conclude that the evidence, viewed in a light most favorable to the verdict, is sufficient to support the jury's finding that Mertes operated a motor vehicle with a detectable amount of restricted controlled substances in his blood contrary to WIS. STAT. § 346.63(1)(am), and that he did so after the revocation of his operating privileges contrary to WIS. STAT. § 343.44(1)(b). We therefore affirm the judgments of conviction.

*By the Court.*—Judgments affirmed.