COURT OF APPEALS
DECISION
DATED AND FILED

March 17, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1848**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV424

**IN COURT OF APPEALS**
**DISTRICT II**

CITY OF CEDARBURG,

    PLAINTIFF-RESPONDENT,

  V.

KATHERINE D. YOUNG,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Affirmed.*

¶1 DAVIS, J.[1] Katherine D. Young appeals from an order finding her guilty of operating while intoxicated (OWI), first offense. The questions on appeal are: (1) whether a person may be convicted of OWI where law enforcement did not investigate or cite that individual at the time of the offense

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

and did not testify or provide evidence at trial; and (2) if a person may be convicted under these circumstances generally, whether the evidence supports Young's conviction. We hold that, by the plain terms of the statute, an OWI conviction does not require the introduction at trial of evidence obtained by law enforcement incident to citation or arrest (for example, chemical test results or police officer testimony). Second, we hold that the City of Cedarburg met its burden to show, by clear and convincing evidence, that Young was driving under the influence. Accordingly, we affirm.

*Background*

¶2 Mid-morning on December 12, 2018, Young entered Cedarburg High School, where she worked as a teacher. In short succession, Young had several interactions with school staff. These witnesses later described Young as smelling of alcohol and unable to walk straight or talk coherently. At the time, each witness believed that Young was acting strangely or was likely intoxicated. The principal brought Young into his office, called her family, and escorted her off the premises. The evidence, which we will discuss below, suggests that Young drove to the school but walked home. Law enforcement did not immediately observe, investigate, or cite Young. Police began investigating the incident about a week later; five weeks after that, Young received a citation in the mail for OWI.[2]

¶3 Young was found not guilty in municipal court. The City requested a de novo trial pursuant to WIS. STAT. § 800.14(4). Young moved to dismiss, arguing that the City could not prove the elements of the offense absent law

---

[2] Young was cited for violating the local ordinance adopting WIS. STAT. § 346.63(1)(a), prohibiting operating while under the influence of an intoxicant or other drug.

2

enforcement's "personal observations, chemical tests of blood or breath, [or] observing Young operate a motor vehicle." The trial court disagreed and denied the motion, and the case proceeded to a bench trial. The City presented five witnesses, all school employees; Young presented no witnesses and did not testify. The court found Young guilty of OWI. This appeal followed.

*Discussion*

¶4 As relevant here, conviction for OWI as a civil offense requires proof, by "clear, satisfactory and convincing" evidence, WIS. STAT. §§ 345.45, 800.08(3), that the defendant "dr[o]ve or operate[d] a motor vehicle while … [u]nder the influence of an intoxicant," WIS. STAT. § 346.63(1)(a). *See also* WIS JI—CRIMINAL 2663A ("Operating a Motor Vehicle While Under the Influence of an Intoxicant—Civil Forfeiture"). Although these cases typically originate with a traffic stop, the statute by its plain terms does not require proof of any factual element that can normally only be obtained incident to citation or arrest. This is in contrast to conviction for operating with a prohibited alcohol concentration, wherein the prosecution must show that blood or breath alcohol concentration was above some numerical value. *See* WIS. STAT. §§ 340.01(1v), (46m); 346.63(1)(b); *see also, e.g.*, WIS JI—CRIMINAL 2660A ("Operating a Motor Vehicle With a Prohibited Alcohol Concentration—Civil Forfeiture—0.08 grams or more").

¶5 On appeal, Young argues that, as a matter of law, law enforcement testimony, chemical test results, or like evidence is necessary to prove that an individual was driving while intoxicated. But Young has not cited, and we are unaware of, any case law to this effect—nor would such requirement seem logical or necessary under the statutory scheme. Certainly, in the typical case, the prosecution will rely on evidence from law enforcement to establish the elements

of OWI, but the law does not *preclude* establishing these elements solely from lay witness testimony. As the City correctly notes, any argument that such testimony is less probative or reliable goes to the weight of that evidence, not its admissibility. Accordingly, the question is not whether a defendant in Young's position can be convicted of OWI as a matter of law, but whether clear and convincing evidence supported this OWI conviction.

¶6 Our review is deferential. We will not set aside the trial court's factual findings unless clearly erroneous, and we give due regard to the opportunity of the court to judge witness credibility. WIS. STAT. § 805.17(2). In reviewing the sufficiency of the evidence, we will not overturn the verdict unless the evidence, viewed most favorably to the verdict, is so lacking in probative value and force that no reasonable trier of fact could have found guilt to the requisite degree. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

¶7 The first element of the OWI offense is that the defendant was driving a vehicle. At trial, the City played video surveillance footage from various vantage points inside and outside Cedarburg High School. The video is not continuous, but the following clips are clear, and there is no dispute that the person in the video is Young. At 9:47-9:48 a.m., Young walked out of the school building, walked through the parking lot, opened and entered a red SUV, and drove away. At 11:31 a.m., a red SUV pulled into the parking lot and parked in that same parking space. At 11:34 a.m., Young walked into the school entryway. At 1:17 p.m., Young walked out of the school building and through the parking lot. At 1:19 p.m., Young walked up to the red SUV but did not drive away. Testimony from Associate Principal Carolyn McNerney established that Young was assigned the parking space in which the red SUV was parked.

4

¶8     On appeal, Young argues that this evidence was insufficient to establish that she was driving because there was no footage close to 11:31 a.m. of her actually exiting the SUV, or in which she is visible driving the SUV. But there is no requirement that direct, as opposed to circumstantial, evidence prove this element of the offense. *See State v. Mertes*, 2008 WI App 179, ¶¶10-17, 315 Wis. 2d 756, 762 N.W.2d 813 (the conclusion that a defendant under the influence was "operating" a vehicle may rest solely on circumstantial evidence; thus, "[t]he issue is not whether Mertes was operating the vehicle at the moment the police approached him, but rather whether there was enough circumstantial evidence to prove that he drove the car"). And although not required to do so, Young offered no evidence rebutting or undermining the import of the City's evidence (she did not show, for example, that she got a ride back to school or had a different parking space). In such case, the trial court reasonably declined to speculate as to how Young may have arrived at, but without driving to, the school at the same time that a vehicle similar or identical[3] to hers drove into her assigned parking space. It was not clearly erroneous for the court to draw the logical conclusion from the footage, when combined with McNerney's testimony: that Young drove her red SUV to the school and parked in her usual spot.

¶9     The second element of the offense is that Young was under the influence of an intoxicant while driving. Five witnesses testified at trial, all of whom knew Young; surveillance footage established the timing of some of these exchanges. At 11:34 a.m. on the day in question, Jennifer Batiansila, a "student

---

[3] From our review of the video footage, the red SUV that Young enters and drives away in at 9:48 a.m. appears identical to the red SUV driven into the lot and parked in Young's spot at 11:31 a.m. The license plates are not visible, however, to conclusively establish that these are the same vehicles. At the very least, these are similar-looking vehicles.

supervisor" in charge of school security, was sitting at a desk in front of an entrance when Young arrived. Batiansila observed Young try to grab the door handle and miss: "[I]t seemed like she struggled to reach the handle." As Young entered, Batiansila "made a welcome back comment like I usually do and [Young] stated something back that wasn't coherent. I couldn't quite understand what she was saying. It sounded more like a mumble." Batiansila "caught a whiff of an alcoholic smell."

¶10    Concerned, Batiansila "brought up the cameras … to, kind of, follow her down the hall" and saw Young "swaying a little bit left and right" in a manner distinct from her usual "direct" or "quick, straight walk[]." Batiansila watched Young through the camera as Young "met someone at the end of the hall and leaned up against the wall." Batiansila observed, "[I]t seemed to me like [Young] was having a hard time standing on her own." Batiansila saw Associate Principal Trent Burg and shared with him her concern that Young "was some level of drunk."

¶11    Robin Vandinter, an administrative assistant, stopped Young in the hallway around 11:35 a.m. to discuss a student matter. Young "was slurring her speech quite a bit and had to brace herself against the doorway as she was talking to me." Vandinter "felt that there was something wrong with Ms. Young, that she needed some attention" and went to notify Adam Kurth, the principal. A short time later, Vandinter was sitting at a desk outside Kurth's office while Kurth and Young were inside the office. Vandinter "could smell alcohol when the office door opened at one point"; the smell was "[s]trong enough for me to smell it at my desk which was probably about 15 feet away."

¶12    Kurth testified that he went to find Young after Vandinter alerted him of Young's behavior. He observed Young "staggering down the hallway," "not able to keep a straight line." Kurth went into Young's classroom to wait for her. Moments later, when Young walked through the door, Kurth noticed "a very distinct odor of alcohol," that Young "continued to stagger," and that she had "a delayed reaction to me being in the classroom." Young "staggered again over to her desk" and sat down. Kurth tried talking to Young, but Young "couldn't maintain eye contact, was very slouched in her chair, and her demeanor really verified that she was under the influence at the time." When asked, Young denied being drunk, but her speech was "[s]lurred, delayed." Kurth asked Young to come to his office; she refused at first but eventually complied. This interaction lasted about five minutes, from 11:36 a.m. to 11:41 a.m.

¶13    Once they were in Kurth's office, Kurth repeatedly asked Young if she was intoxicated, but she denied being so. Young was "defensive" and "a little bit aggressive." Kurth asked Associate Principals McNerney and Berg to wait with Young while Kurth stepped out of the office. Kurth was away for about fifteen minutes; when he walked back into his office, "the smell of alcohol was extremely apparent," and Young "was sitting in a very slouched manner." Young admitted to drinking the night before but not that day. She wrote out a statement of her movements on that day; the handwriting was "[s]loppy" and "not reflective of her typical handwriting." Young "continued to ask why she was there."

¶14    School officials called Young's mother to pick her up; when Young learned that they had done so, she "responded very inappropriately" and began using profanity. From Kurth's observation, Young's affect remained "not something that would be typical of a staff member": her speech was slurred, her skin "discolored," her odor "very apparent," and her posture "very slouched."

7

Young's mother arrived and school authorities escorted Young outside, but Young was "very upset," walked away, would not leave with her mother, and tried to hide behind some trees. After her mother left, Young tried to open her SUV door but could not (her keys had been confiscated) and eventually left on foot.

¶15 Associate Principal McNerney testified that she was present with Young in Kurth's office. When McNerney walked into the office, she "could immediately smell alcohol in the room." McNerney noticed that Young's speech was slurred and her face flushed. Young "kept asking what was going on" and "if she could get back to her class"; McNerney repeatedly responded "that we were concerned … and that [Young] needed to stay with us and that her students were fine." This conversation repeated for about ten or fifteen minutes, with Young "ask[ing] the same questions … three to five times maybe" about why she was there. At one point, Young tried to "push [McNerney] out of the way" so that she could leave, but then she sat back down.

¶16 When McNerney told Young that she thought Young was drunk, Young denied being so and explained that she might smell like alcohol because she drank the night before. McNerney was "concerned" by this explanation because "there was no reason [that Young] should still have what appeared to be an intoxicated reaction to the alcohol she had the night before." Upon learning that her mother would be coming to the school, Young "was very angry," "swore," and "dropped the 'F' bomb." Based on Young's presentation and behavior, McNerney was "certain" that Young was intoxicated.

¶17 Associate Principal Berg testified that he first encountered Young in Kurth's office. Berg stated, "You could smell alcohol and [Young] just had some different behaviors…. Her speech was slurred and … several times she'd ask[] if

it was okay if she left, and we said we wanted her to stay." The smell of alcohol "was strong enough that I could smell it from … a few feet away." Young "seemed just very uncomfortable with being in the office interacting with us. She was saying, you know, I didn't do anything, why can't I leave…. [H]er speech was slurred … just some unusual behavior that you wouldn't normally see." As Young described her day, she seemed "a little bit off" and "not clear on every single detail of what was going on with her day." Berg was "pretty sure" that the smell of alcohol was coming from Young's person and not her coat.

¶18    Young did not testify or present witnesses. Thus, the trial court heard five compatible, unrebutted, and unbiased[4] accounts of Young's physical appearance and behavior, all consistent with her being inebriated, based on interactions beginning within minutes of her driving to the school. The trial court had no reason to doubt these observations or any related conclusions that Young was intoxicated. *See* ***State v. Burkman***, 96 Wis. 2d 630, 645, 292 N.W.2d 641 (1980) ("[A] lay witness, who has had the opportunity to observe the facts upon which he bases his opinion, may give his opinion as to whether a person at a particular time was or was not intoxicated."). Nor, given this testimony, did the court err in drawing its own conclusion that Young was intoxicated. If not conclusive, the combined descriptions of Young were, at the very least, consistent with her being under the influence: Young had a staggered walk, delayed reactions, slurred speech, slouched posture, and flushed face; smelled strongly of alcohol; could not maintain eye contact; could not write in her normal handwriting; was by turns confused and aggressive; and generally behaved in an

---

[4] No evidence of bias was presented or elicited on cross-examination.

unusual and unprofessional manner. At trial, Young argued that perhaps she smelled of alcohol from the night before, or perhaps there was some medical explanation for her condition, but the court heard no evidence to this effect. Thus, the court was not clearly erroneous in reaching the most likely explanation for Young's looking and acting drunk, which was that she was drunk.

¶19 Young argues that, even assuming she drove to the school, and even assuming she was intoxicated upon entering the school, the evidence cannot establish that she drove while intoxicated. Young posits that she could have drunk enough alcohol between 11:31 a.m. and 11:34 a.m. to reach the level of intoxication observed by the testifying witnesses. The trial court implicitly rejected this argument, and we find that it did not err in doing so. Three of the City's witnesses saw Young within roughly five minutes of her parking her car, and Batiansila saw Young at about 11:34 a.m., within three minutes of parking. These witnesses described a degree of intoxication inconsistent with Young's having had her first drink three to five minutes prior.[5] The trial court was not clearly erroneous in concluding that Young was already intoxicated when she drove to the school.

¶20 Finally, Young argues that, if we "[a]ffirm[] the process" wherein she was found guilty, it would set a "dangerous precedent." In Young's view, it is fundamentally unfair that a person could be cited and convicted for OWI based

---

[5] In arguing otherwise, Young points to the fact that, she says, she got a blood draw earlier that day. We will assume that Young did get a blood draw, but without evidence on this point, such as testimony from her physician, we cannot infer that some physical condition caused her to become severely inebriated in an unusually short timeframe. The trial court was not clearly erroneous in concluding that Young was already drunk before she parked her car.

solely on lay witness testimony and circumstantial evidence.[6] We see no merit in such broad assertions. Regardless of whether law enforcement testifies, or whether the evidence is direct or circumstantial, the prosecution must prove the same elements of the OWI offense to the requisite degree of guilt. That there are not more cases similar to Young's speaks only to the difficulty—in most situations—in convicting a defendant without chemical test results or police officer testimony. Whether cases *should* be brought generally in the absence of such evidence is a matter of prosecutorial discretion on which we make no comment. We hold only that here, the video footage of Young's SUV and the consistent and unrebutted lay witness testimony was sufficient evidence supporting the OWI conviction.[7]

---

[6] Young further implies that some error lies with the length of time between offense and citation (forty-three days) and with the fact that the citation was mailed to her. As she cites to no law and does not develop these arguments, we will not address them. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

[7] We reject Young's argument that her Sixth Amendment right to confrontation was violated when the citing police officer did not testify and that we should accordingly reverse under the plain error doctrine. *See State v. Jorgensen*, 2008 WI 60, ¶¶21-23, 34, 310 Wis. 2d 138, 754 N.W.2d 77. The Sixth Amendment applies only to criminal prosecutions. *See id.*, ¶34 & n.10-11; *see also Town of Geneva v. Tills*, 129 Wis. 2d 167, 176-77, 384 N.W.2d 701 (1986) (right to confrontation inapplicable to civil forfeiture action for operating under the influence/illegal blood alcohol concentration). More fundamentally, the City's case was not based on any out-of-court statement that might raise Sixth Amendment concerns. The citation was a pleading that was not and could not be admitted into evidence, and no other statement by the citing police officer was admitted into evidence. *See State v. Mattox*, 2017 WI 9, ¶24, 373 Wis. 2d 122, 890 N.W.2d 256 ("[A] defendant's right to confrontation is violated if the trial court *receives into evidence* out-of-court *statements* by someone who does not testify at the trial if those statements are 'testimonial' and the defendant has not had 'a prior opportunity' to cross-examine the out-of-court declarant.") (emphasis added; citation omitted); *see also City of Cedarburg v. Hansen*, 2020 WI 11, ¶27, 390 Wis. 2d 109, 938 N.W.2d 463 ("[T]he proceeding was commenced by Hansen's civil traffic citations, which are the *pleadings* that alleged that the OWI … violation[] arose under an ordinance.") (emphasis added). Because no Sixth Amendment right was implicated in this case, we have no reason to reach the plain error issue raised by Young.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.