# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 15, 2024

**Samuel A. Christensen**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP992**

Cir. Ct. No. **2021CV84**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

CITY OF WATERTOWN,

    PLAINTIFF-RESPONDENT,

  V.

ANDREW D. WIEST,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Jefferson County: WILLIAM F. HUE, Judge. *Affirmed*.

¶1 GRAHAM, J.[1] Following a jury trial, Andrew Wiest was found guilty of operating a motor vehicle while under the influence of an intoxicant and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

operating a motor vehicle with a prohibited alcohol concentration, contrary to WIS. STAT. § 346.63(1)(a) and (b), both as first offenses. On appeal, Wiest argues that the evidence was insufficient to support the verdicts. I disagree and therefore affirm the judgment.

## BACKGROUND

¶2 Wiest was arrested around bar time one morning, after an officer found him intoxicated and sleeping in a parked vehicle with the ignition turned off. Based on these events, he was issued municipal citations for operating a motor vehicle while under the influence of an intoxicant and with a prohibited alcohol concentration. A municipal court found him guilty of both offenses, and Wiest requested a de novo jury trial in the circuit court. The following facts are taken from the evidence that the City introduced at trial.

¶3 The arresting officer testified that she was working third shift, assigned to patrol a "more concentrated area of houses and businesses in the center of the city" of Watertown. At approximately 3 a.m., she observed a truck parked in a no-parking zone on East Main Street, near the corner of Main and First Street. The officer observed that the truck's "high beams," meaning its bright headlights, were illuminated. As the officer drove past, she observed that the truck's back tire was over the curb and resting on the sidewalk, and that a man she later identified as Wiest was sitting in the driver's seat, apparently asleep, with his head back and mouth hanging open.

¶4 The officer parked her squad car next to Wiest's truck, activated the squad car's emergency lights, and approached the truck on foot. When she knocked on the window, Wiest woke up immediately. He was unable to roll down his window and instead opened the door. The officer observed that the keys were

2

in the ignition, but the truck was not running. The officer warned Wiest not to turn it on.

¶5 The officer detected the strong odor of alcohol emitting from the truck, and observed an open intoxicant in the center console. She asked Wiest to exit the truck and he complied, removing the keys from the ignition without engaging it. It is undisputed that the officer never observed Wiest "turning or manipulating or trying to activate" the ignition.

¶6 The officer asked Wiest how he had arrived on Main Street. Wiest responded that he was coming from "River Bend," a campground just outside of Watertown, where he had "one or two" beers. According to Wiest, he had consumed those beers earlier in the evening, around 9 or 10 p.m. The officer had difficulty understanding Wiest because his speech was slurred.

¶7 The officer asked Wiest to perform field sobriety tests, which he failed. Wiest was arrested and he consented to a chemical test of his blood, which later revealed a blood alcohol concentration that was significantly above the legal limit.[2] In the course of obtaining his consent to chemical testing, the officer asked Wiest several standard questions about whether he had been drinking and driving. In response, Wiest admitted that he had operated a motor vehicle on Main Street, denied that he had been drinking, and denied that he had consumed any alcohol or drugs since the last time he had driven.

---

[2] At trial, the City also presented the testimony of a forensic scientist from the state laboratory of hygiene who validated the chemical test results.

¶8      At trial, the parties agreed that, at the time the officer made contact with Wiest, Wiest was under the influence of an intoxicant, had a prohibited alcohol concentration, and was parked on a highway. The parties further agreed that, even though Wiest's keys were in the ignition, Wiest was not "operating" his truck at that time. *See* WIS JI—CRIMINAL 2668. Therefore, the central issue was whether the City could prove, based on circumstantial evidence, that Wiest had operated his truck in that condition at an earlier point in time. The circumstantial evidence included the officer's testimony about her interaction with Wiest, her observations of his truck, and body camera footage depicting portions of their interaction and Wiest's arrest.

¶9      During the trial, the officer was asked: "When was the last time you went by [the Main Street] area before you stopped to investigate [Wiest's truck]?" In response, the officer testified that it was "very hard to judge that time." As she explained, her shift started at approximately 10 p.m. the night before, and when she patrols the downtown area, she "weave[s] through" the streets and "end[s] up on Main Street a lot." She testified that she "never actually timed it," but that it is "not a huge amount of time." She also testified that there were several bars in the area that are open until 2:30 a.m., and that she "like[s] to make sure [she's] down there [to] keep an eye on things." According to the officer, it was "obvious that [Wiest's truck] was parked somewhere in such a manner that it should not have been," and she was "confident" that she "would have noticed a vehicle parked like that" if the truck had been there earlier as she passed through the Main Street area.

¶10      At the close of the City's case, Wiest moved for a directed verdict. He argued that the City failed to establish the time that Wiest had operated his truck, and therefore, the jury could not conclude that Wiest had operated a vehicle while under the influence of an intoxicant or with a prohibited alcohol

4

concentration. The circuit court denied the motion on the basis that "[a] reasonable jury could reach a [guilty] verdict in this case."

¶11 The circuit court instructed the jury that, in order to find Wiest guilty, it had to find that he "operated a motor vehicle on a highway" and that he "was under the influence of an intoxicant [or that he had a prohibited alcohol concentration] at the time [he] operated [the] motor vehicle." WIS JI—CRIMINAL 2668. Consistent with the pattern instruction, the court also instructed the jury that "operate" means "the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion."

¶12 During closing arguments, the prosecutor argued that the evidence, as summarized above, was sufficient to show that Wiest had driven his truck to Main Street, where he parked, and that he was intoxicated and had a prohibited alcohol concentration at that time. In his closing argument, Wiest's attorney emphasized that the City had conceded that Wiest was not operating the vehicle when the officer made contact with him. Wiest's attorney argued that the whole case "comes down to when—what time [] the vehicle [got] there." He emphasized that the officer was unable to say when she had last passed by Main Street, and that she had performed no further investigation that could have been used to establish the time of operation, such as examining security camera footage or checking the hood of the truck to see whether it was warm to the touch.

¶13 During the deliberations, the jury sent a note to the judge, asking whether "the insertion of the key in the ignition" satisfied the definition of "operation." After consulting with counsel, and consistent with the response

suggested by Wiest's attorney, the circuit court instructed the jury to review WIS JI—CRIMINAL 2668, which defines "operation" as set forth above.[3]

¶14    The jury returned a verdict of guilty on both charges, and the court entered judgment accordingly.  Wiest appeals.[4]

## DISCUSSION

¶15    On appeal, Wiest argues that the evidence was insufficient to support a finding of guilt.  As discussed, it is undisputed that Wiest was not operating his truck at the moment the officer encountered it.  Wiest contends that the circumstantial evidence was insufficient to establish that he had operated the truck while under the influence of an intoxicant (or with a prohibited alcohol concentration) prior to being discovered by the officer because the evidence did not establish if or when he had operated the vehicle.

¶16    In determining whether the evidence was sufficient to support the verdicts, I consider "whether [the trial] evidence, viewed in the light most favorable to the [City], is so insufficient in probative value and force that as a

---

[3] Although Wiest recounts the jury's question and the court's response in his appellate briefing, he does not argue that the court's answer misstated the law or was misleading, or that he is entitled to any remedy on that basis.

[4] Neither party's brief complies with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs.  *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover").  This rule was amended in 2021, *see* S. CT. ORDER 20-07 (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for e-filing.  As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  S. CT. ORDER 20-07.

matter of law no reasonable jury could have found guilt." *State v. Poellinger*, 153 Wis. 2d 493, 500, 451 N.W.2d. 752 (1990). "If there is any possibility that the jury could have drawn the appropriate inferences from the evidence to support its verdict," I will not overturn a verdict even if I "believe the jury should not have found guilt based on the evidence." *State v. Graham*, 2000 WI App 138, ¶6, 237 Wis. 2d 620, 614 N.W.2d 504. "If more than one reasonable inference can be drawn from the evidence," I will "adopt the inference that supports the verdict." *State v. Mertes*, 2008 WI App 179, ¶10, 315 Wis. 2d 756, 762 N.W.2d 813.

¶17　Turning to Wiest's case, I conclude that the trial evidence was sufficient to support the verdicts for the following reasons.

¶18　First, the evidence was plainly sufficient to support the inference that Wiest had operated a motor vehicle on a highway—more specifically, that he had driven his truck and parked it on Main Street prior to his arrest. As discussed, the officer found Wiest asleep in the driver's seat of the truck with the keys in the ignition, and there is no evidence suggesting that any other person drove the truck to that location and parked it. Indeed, when asked by the officer, Wiest admitted that he had operated his motor vehicle on Main Street.

¶19　Second, the evidence was also sufficient to support the inference that Wiest was under the influence of an intoxicant (and that he had a prohibited alcohol concentration) when he parked the vehicle on Main Street. Wiest admitted to having consumed alcoholic beverages at a different location earlier that evening and denied having consumed alcoholic beverages after he last operated his truck, and when the officer encountered him in the driver's seat of his truck at 3 a.m., he was obviously intoxicated. What's more, the truck was parked in a manner that was consistent with the driver having been intoxicated—it was parked in a marked

no parking zone, with the rear tire over the curb on the sidewalk, and with the driver having neglected to turn off the headlights after shutting off the ignition. From this evidence, the jury could have reasonably inferred that Wiest was under the influence of an intoxicant (and had a prohibited alcohol concentration) at the time he parked the truck.

¶20     Wiest attacks the sufficiency of the evidence on the ground that the City did not establish the time that Wiest operated the vehicle while intoxicated (or with a prohibited alcohol concentration). I reject this argument for at least two reasons. First, Wiest does not cite any legal authority to support the proposition that the City is required to establish the precise time of operation—the City must prove that Wiest operated a vehicle while he was under the influence of an intoxicant (or had a prohibited alcohol concentration), not precisely when he did so. Second, the evidence in this case reasonably supported an inference of recent intoxicated driving. In addition to the evidence discussed above, which indicated that Wiest was intoxicated when he parked his truck on Main Street, the arresting officer testified that she had been patrolling the downtown area since her shift started at approximately 10 p.m. She further testified that she did not see Wiest's truck on her earlier patrols of Main Street, and that she would have noticed the truck had it been there on her earlier patrols, given the way that it was parked. Although she could not pinpoint the exact time of her earlier patrol, the jury could have inferred from her testimony that she had recently patrolled the area, that Wiest's truck was not there during her latest patrol, and that Wiest parked his truck on Main Street shortly before she encountered it.

¶21     Finally, Wiest contrasts the facts of his case to those in *Mertes*, 315 Wis. 2d 756. In *Mertes*, like this case, the evidence of operation was almost entirely circumstantial, and we determined that it was sufficient to support

Mertes's OWI-related convictions. *See id.*, ¶1. Wiest's argument about *Mertes* does not alter my view of the evidence in this case. Regardless of whether the evidence in Wiest's case was stronger or weaker than the evidence in *Mertes*, it was sufficient for the reasons noted above.[5]

¶22 For all these reasons, I reject Wiest's arguments and affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] A focal point of Wiest's argument about *Mertes* is that there, the keys were in the ignition and in the "auxiliary" position at the time an officer encountered Mertes in the driver's seat of his parked car. *See State v. Mertes*, 2008 WI App 179, ¶3, 315 Wis. 2d 756, 762 N.W.2d 813. Here, by contrast, Wiest's keys were in the ignition, but not in the auxiliary position. Based on this distinction, Wiest appears to be arguing that there was strong evidence that Mertes had "manipulated" the keys "to the auxiliary position," and that such evidence is lacking in this case.

Wiest's argument identifies a factual distinction between the two cases, but not one that is dispositive. Although Wiest's trial did not feature evidence from which the jury could infer that Wiest manipulated the keys into the auxiliary position, there was other evidence, summarized above, from which the jury could infer that Wiest had physically manipulated or activated the controls of his truck such as to put it in motion, eventually parking it on Main Street. *See* WIS JI—CRIMINAL 2668.