Karl A. Burg by his legal guardian, Gladys M. Weichert, Plaintiff-Appellant,

v.

Cincinnati Casualty Insurance Co. and Robert W. Zimmerman, Defendants-Respondents-Petitioners.

Supreme Court

*No. 00–3258. Oral argument April 9, 2002.—Decided June 26, 2002.*

2002 WI 76

(Also reported in 645 N.W.2d 880.)

For the defendants-respondents-petitioners there were briefs by *Gregory J. Cook, Anthony P. Hahn* and *Kasdorf, Lewis & Swietlik, S.C.*, Wausau, and oral argument by *Gregory J. Cook* and *Anthony P. Hahn.*

For the plaintiff-appellant there was a brief by *Victor C. Harding* and *Warshafsky, Rotter, Tarnoff,*

*Reinhardt & Bloch, S.C.,* Milwaukee, and oral argument by *Victor C. Harding.*

An amicus curiae brief was filed by *John T. Podbielski, Jr.* and *Schelble & Podbielski, S.C.,* Milwaukee, on behalf of Mothers Against Drunk Driving (MADD).

¶ 1. DIANE S. SYKES, J. This case involves a serious snowmobile accident and requires us to determine the scope of the term "operate" for purposes of Wis. Stat. § 350.09, (1995-96)[1] a snowmobile safety statute that requires anyone who operates a snowmobile at night to illuminate the snowmobile's head and tail lamps.

¶ 2. The plaintiff Karl Burg was severely injured while snowmobiling at night. At the time of the accident, Burg was traveling on the graded, unfinished bed of new highway lanes under construction, which ran alongside an existing highway. The accident occurred when Burg swerved to avoid hitting another snowmobiler, who had, five minutes earlier, together with a companion, stopped and shut off his snowmobile on the same path Burg was using.

¶ 3. Before trial, Burg moved for a determination that the driver of the stopped snowmobile was negligent per se for violating Wis. Stat. § 350.09, which requires head and tail lamps to be illuminated when a snowmobile is operated at night, and Wis. Stat. § 346.51, which prohibits the parking, standing, or stopping of any vehicle upon a roadway. The circuit court denied the motion, concluding that a snowmobile completely stopped with its engine off was not being "operated" within the meaning of the head and tail lamp statute. The court further concluded that the statute prohibit-

---

[1] All future references will be to the 1995-96 version of the Wisconsin Statutes.

ing the parking, stopping, or standing of any vehicle upon a roadway did not apply, because the snowmobile was stopped some distance off the actual highway, on the unfinished roadbed of the additional lanes that were under construction.

¶ 4. The court of appeals reversed, concluding that the stopped snowmobile was being "operated" within the meaning of the head and tail lamp statute, because the act of stopping the snowmobile was sufficient to meet the statutory definition of "operate." We disagree. The snowmobile statutes define "operate" as "the exercise of physical control over the speed or direction of a snowmobile or the physical manipulation or activation of any of the controls of a snowmobile necessary to put it in motion." Wis. Stat. § 350.01(9r). This definition does not include merely sitting on a stopped snowmobile with the engine off. We also agree with the circuit court's conclusion that Wis. Stat. § 346.51 does not apply because a graded roadbed under construction does not constitute a "roadway" within the meaning of the statute. Accordingly, we reverse.

I

¶ 5. On the evening of November 29, 1995, two pairs of snowmobilers were traveling on a make-shift snowmobile trail in Racine County. Highway 36 was under re-construction—two lanes were being added to expand the existing two-lane highway into four lanes. The two new lanes under construction were graded and flat, making it a good place to run a snowmobile. The defendant Robert Zimmerman and his friend, Dean Leighton,[2] were snowmobiling on the unfinished new

---

[2] Leighton is not a party to this litigation. He signed a *Pierringer*-type release prior to the filing of this lawsuit.

lanes. At approximately Highway 36 and Malchine Road, they stopped and shut off their snowmobiles, in the middle of the lane of snowmobile travel on the unfinished road bed.

¶ 6. Both snowmobiles were configured in such a way that when the sleds were turned off, the head lamps and tail lamps were extinguished and could not be re-illuminated until the engine was restarted. To restart the snowmobile, the ignition key had to be turned and a cord pulled.[3]

¶ 7. The plaintiff Karl Burg and his friend Robert Dros were also snowmobiling on the unfinished new lanes of Highway 36. Burg was in the lead, ahead of Dros by approximately 100 to 110 feet, and traveling between 35 and 40 m.p.h. They came to the location where Zimmerman and Leighton were sitting on their stopped, unilluminated snowmobiles, approximately five minutes after Zimmerman and Leighton got there. Dros saw Burg's brake light come on, his sled fishtail, and his brake light extinguish.

¶ 8. Burg evidently had not seen Zimmerman or Leighton until it was too late, swerved in an apparent effort to avoid hitting Zimmerman, and instead struck Leighton's sled. Either on impact or sometime thereafter, Burg's helmet came off. Burg was thrown into the air and landed approximately 40 feet from the point of impact. He suffered severe and permanent head injuries. Leighton, who was also thrown from his sled, was knocked unconscious. His helmet, however, remained secure, and he regained consciousness at the scene.

---

[3] Testimony showed that although it was possible to do so, it was extremely difficult to pull the cord while seated on the snowmobile. Zimmerman testified that it was more practical to get off the sled and pull the cord from a standing position.

¶ 9. Burg sued Zimmerman, alleging that Zimmerman had been negligent in the operation and parking of his snowmobile. Prior to trial, Burg moved for an order declaring Zimmerman negligent per se for violating Wis. Stat. § 350.09(1) and (3). This statute generally sets forth the lighting requirements for a snowmobile. Subsection (1) requires that when operated during the hours of darkness, a snowmobile must have its head lamp and tail lamp illuminated. Wis. Stat. § 350.09(1). Subsection (3) imposes an additional requirement that the illuminated tail lamp be visible for 500 feet. Wis. Stat. § 350.09(3).

¶ 10. The Milwaukee County Circuit Court, the Honorable Michael Malmstadt, denied the motion. The circuit court noted that a boating statute requires boaters who are stopped in the water to show a light, *see* Wis. Stat. § 30.61(6), but said there was no similar statute for snowmobilers. Accordingly, the court reasoned that "[i]f the legislature had wanted to require people who stop and park somewhere with a snowmobile to have a light on it when it is stopped, they could have said so. They have said so with other vehicles such as boats . . . I guess there is no dispute that Mr. Zimmerman stopped his snowmobile and was sitting on it talking to another guy who also had a snowmobile, and they were sitting there. Sitting on it I don't believe under the law is operating it."

¶ 11. During the second day of the ensuing jury trial, Burg renewed his motion to have Zimmerman declared negligent per se for violation of Wis. Stat. § 350.09. In addition, Burg also asserted that Zimmerman was negligent per se for violating Wis. Stat. § 346.51, which prohibits stopping, standing, or parking a vehicle in a business or residential district upon the roadway of a highway.

¶ 12. The circuit court again denied the motion. "This statute, 346.51, is designed to protect people traveling on the roadway. You're trying to get it to say that they are negligent vis-à-vis snowmobilers who are traveling off the roadway . . . 55 feet from the roadway, the negligence of this statute in my view relates to people traveling on the roadway . . . [i]t doesn't relate to people traveling off the roadway." Judge Malmstadt also stuck to his earlier ruling that "operation" for purposes of the snowmobile head and tail lamp statute did not include the act of merely sitting on a parked snowmobile with its engine off: "Snowmobiles . . . in this state can be parked without a light, according to the law. Now that doesn't mean that parking it without a light on in the middle of the pathway used by other snowmobiles is not negligence. It's just not statutorily prohibited."

¶ 13. At the close of evidence, Burg again renewed his motion on the negligence per se issues, and the motion was again denied. The jury found Burg negligent and Zimmerman not negligent. Burg moved for a new trial, reiterating his negligence per se arguments, and also challenging the jury's damages award as perversely low. The motion was denied, and Burg appealed.

¶ 14. In a split decision, the court of appeals reversed the circuit court, concluding that Zimmerman was "operating" his snowmobile within the meaning of Wis. Stat. § 350.09 and 350.09(9r), and therefore was negligent per se.[4] The court concluded that the definition of "operate" in Wis. Stat. § 350.01(9r) included "a person's actions in stopping a snowmobile and turning off its motor because, literally, such actions do 'exercise physical control over the speed and direction' of the

---

[4] The court of appeals did not address the negligence per se argument under Wis. Stat. § 346.51.

snowmobile." *Burg v. Cincinnati Cas. Ins. Co.*, 2001 WI App 241, ¶ 10, 248 Wis. 2d 145, 635 N.W.2d 622. The court of appeals remanded the case for a new trial. We accepted review.

## II

¶ 15. This case concerns the meaning of the term "operate" in Wis. Stat. § 350.01(9r) for purposes of the head and tail lamp illumination requirement of Wis. Stat. § 350.09. This is a question of statutory interpretation that we review de novo. *Peterson v. Midwest Security Ins. Co.*, 2001 WI 131, ¶ 11, 248 Wis. 2d 567, 636 N.W.2d 727.

¶ 16. "Statutory interpretation begins with—and, absent ambiguity, is confined to—the language of the statute," and statutory words and phrases, unless technical in nature or carrying a peculiar legal meaning, are construed according to common and ordinary usage. *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶ 10, 244 Wis. 2d 758, 628 N.W.2d 833; *Peterson*, 2001 WI 131, ¶ 19. *See also,* Wis. Stat. § 990.01(1).

¶ 17. The snowmobile head and tail lamp statute, Wis. Stat. § 350.09, provides:

**Head lamps, tail lamps and brakes, etc.** (1) Any snowmobile operated during the hours of darkness or operated during daylight hours on any highway right--of–way shall display a lighted head lamp and tail lamp. . . .

(3) After February 12, 1970, the tail lamp on a snowmobile must display a red light plainly visible during darkness from a distance of 500 feet to the rear.

Wis. Stat. § 350.09(1) and (3).

¶ 18. There is no dispute that the accident occurred during the "hours of darkness" for purposes of this statute. Whether Zimmerman was required to display a lighted head and tail lamp, and therefore was negligent per se for failing to do so, depends upon whether the term "operate" within the meaning of the statute includes sitting on a snowmobile that is parked and shut off.

¶ 19. "Operate" is a defined term in Chapter 350, which pertains to the regulation of snowmobiles. " 'Operate' means the exercise of physical control over the speed or direction of a snowmobile or the physical manipulation or activation of any of the controls of a snowmobile necessary to put it in motion." Wis. Stat. § 350.01(9r).[5]

¶ 20. The statute is not ambiguous. Two activities qualify under this definition of "operate": 1) the exercise of physical control over the speed or direction of a snowmobile; and 2) the physical manipulation or activation of any of the controls necessary to put the snowmobile into motion.[6]

---

[5] The statutory definition of "operate" concludes with this sentence: " 'Operate' includes the operation of a snowmobile." This apparently was intended to make the terms "operate" and "operation" essentially synonymous throughout Chapter 350. Section 950.01(9r) was created by 1987 Wis. Act 399, § 443qe. When originally enacted the subsection read, " 'Operation of a snowmobile' means controlling the speed or direction of a snowmobile." The definition was then amended in 1991. The amendment deleted the reference to "operation" and changed the term to "operate," 1991 Wis. Act. 39, § 3233, making clear, however, that the new defined term "operate" includes the old defined term "operation."

[6] Similar language appears in the Implied Consent and Operating While Intoxicated statutes, Wis. Stat. §§ 343.305 and

¶ 21. Sitting on a snowmobile while it is stopped and shut off does not involve the exercise of physical control over the speed or direction of the snowmobile. "Speed" means magnitude of velocity, and therefore concerns movement. *See The American Heritage Dictionary of the English Language* 1731 (3d ed. 1992). Similarly, "direction" means the "course along which a person or thing moves." *Id.* at 527. A parked snowmobile with its engine off is obviously stationary. Sitting on a parked snowmobile with its engine off cannot constitute the exercise of physical control over its speed or direction.

¶ 22. The second part of the definition—the physical manipulation or activation of the controls of a snowmobile to put it in motion—does not necessarily require the snowmobile to actually be in motion. *See State v. Modory,* 204 Wis. 2d 538, 544, 555 N.W.2d 399 (Ct. App. 1996); *Milwaukee County v. Proegler,* 95 Wis. 2d 614, 628, 291 N.W.2d 608 (Ct. App. 1980). It does, however, plainly require some affirmative physical act of manipulation or activation of the snowmobile's controls necessary to put it in motion. Sitting on a parked snowmobile with its engine off is not, without more, the "manipulation or activation" of the snowmobile's controls necessary to put it in motion.

346.63. However, the drunk driving statutory scheme uses the phrase "drive or operate," and separately defines those terms. *See* Wis. Stat. §§ 346.63(3)(a) and (b), 343.305(1)(b) and (c). Accordingly, "operate" is defined a bit more narrowly for purposes of the OWI and refusal statutes, and refers only to "the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion." Wis. Stat. §§ 346.63(3)(a) and (b), 343.305(1)(b) and (c).

¶ 23. The court of appeals majority relied upon *Proegler* and *Modory* to support the conclusion that Zimmerman was operating his snowmobile within the meaning of Wis. Stat. § 350.01(9r). As noted by the court of appeals' dissent, however, *Proegler* and *Modory* actually support the opposite conclusion.

¶ 24. *Proegler* involved the prosecution of a drunk driver who had been found asleep and intoxicated at the wheel of his parked but still running vehicle. The court of appeals held that "restraining the movement of a running vehicle constitutes physical manipulation of a vehicle's controls . . . ." *Proegler*, 95 Wis. 2d at 627–28. The court concluded that " '[o]peration' of a vehicle occurs either when a defendant starts the motor and/or leaves it running." *Id.* at 628–29. Accordingly, *Proegler* stands for the proposition that "operate" for purposes of the drunk driving statutes includes starting the engine or restraining the movement of a parked but still running vehicle.[7]

¶ 25. *Modory* also involved a drunk driving prosecution. There, the defendant was in the driver's seat at the controls of his pickup truck, with the truck's engine running and its wheels spinning, but going nowhere, because the truck was stuck on a mound of dirt.

---

[7] Burg attempts to bolster his argument by reference to the general definition of "operator" contained in the motor vehicle code. Wisconsin Statute § 340.01(41) defines "operator" as "a person who drives or is in actual physical control of a vehicle." Wis. Stat. § 340.01(41). This is unavailing for two reasons. First, Chapter 350, which governs snowmobiles, has its own definition of "operator." *See* Wis. Stat. § 350.01(9w). Second, Wis. Stat. § 340.01(74) generally excludes snowmobiles from the motor vehicle code, except where otherwise specified: "[a] snowmobile shall not be considered a vehicle except for purposes made specifically applicable by statute."

*Modory,* 204 Wis. 2d at 540. The court of appeals held that the immobility of the truck was immaterial, because the physical manipulation or activation of the controls of the vehicle for purposes of the definition of "operate" did not necessarily require that the vehicle be moving. The court concluded that the defendant had "performed the requisite acts" under the definition of "operate" for purposes of the drunk driving laws, because "[h]e was behind the wheel of a vehicle with the engine running and was attempting to free the vehicle from its stuck position." *Id.* at 543–44.

¶ 26. Here, the court of appeals focused on the act of stopping the snowmobile and turning off its motor as the requisite "physical manipulation" of the snowmobile's controls. But this misreads the evidence in the case. Zimmerman was not in the process of stopping his snowmobile and turning off its engine when the accident occurred; he had done that five minutes earlier. *Proegler* and *Modory* involved drunk drivers who were exercising some form of control over running vehicles—in *Proegler,* restraining it from moving, and in *Modory,* attempting to move it.

■

¶ 27. In contrast, at the time of the accident here, Zimmerman was merely sitting on his snowmobile while it was parked with its engine off. This is insufficient to constitute "operation" of the snowmobile for purposes of the head and tail lamp illumination requirement in Wis. Stat. § 350.09.[8] The circuit court correctly

---

[8] Mothers Against Drunk Driving filed an amicus curiae brief in this case, concerned about any influence it might have on the enforcement of drunk driving laws. We do not perceive any potential for negative affect. This case concerns a safety statute that specifies when the driver of a snowmobile must

concluded that Zimmerman was not negligent per se for violation of Wis. Stat. § 350.09.

■

¶ 28. The circuit court also correctly concluded that Wis. Stat. § 346.51 does not apply to this case. This statute prohibits the parking, stopping, or standing of any vehicle, attended or unattended, upon the roadway of any highway outside a business or residence district.[9] Wisconsin Statute § 340.01(54) defines "roadway" as "that portion of a highway between the regularly established curb lines or that portion which is improved, designed or ordinarily used for vehicular travel, excluding the berm or shoulder." The graded but still unfin-

---

illuminate the snowmobile's head and tail lamps. The definition of "operate" in the drunk driving statutes is not at issue. Furthermore, "operation" for purposes of the drunk driving laws can be proved circumstantially. A defendant found intoxicated behind the wheel of a parked car with its engine off but still warm might well be prosecuted on that circumstantial evidence of recent "operation."

[9] Wisconsin Statute § 346.51 is made applicable to snowmobiles by Wis. Stat. § 346.02(10), and provides, in pertinent part:

(1) No person shall park, stop or leave standing any vehicle, whether attended or unattended, upon the roadway of any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway, but even the parking, stopping or standing of a vehicle off the roadway of such highway is unlawful unless the following requirements are met:

(a) An unobstructed width of at least 15 feet upon the roadway of such highway must be left opposite such standing vehicle for the free passage of other vehicles. . . .

(b) Such standing vehicle must be capable of being seen by operators of other vehicles from a distance of 500 feet in each direction along such highway.

ished bed of highway lanes under construction is clearly not a "roadway" under this definition. Accordingly, Wis. Stat. § 346.51 does not provide a basis for finding Zimmerman negligent per se.

¶ 29. To summarize, Wis. Stat. § 350.09 requires anyone who "operates" a snowmobile during the hours of darkness to illuminate the snowmobile's head and tail lamps. Because the statutory definition of "operate" does not include the act of sitting on a parked snowmobile with its engine off, Zimmerman was not negligent per se for failing to have the head and tail lamps of his snowmobile illuminated at the time of the accident. Furthermore, an unfinished roadbed under construction does not constitute a "roadway" for purposes of Wis. Stat. § 346.51, which prohibits the parking, standing, or stopping of a vehicle on a roadway, and therefore does not provide a basis for a finding of negligence per se.[10] The court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 30. N. PATRICK CROOKS, J. *(dissenting)*. I cannot join the majority's opinion because I conclude that the driver of the snowmobile was indeed "operating" the snowmobile as defined in Wis. Stat. § 350.01. I would affirm the court of appeals' decision that stopping a snowmobile and turning off its motor is "operation," because such actions require the exercise of physical control over the speed and direction of the snowmobile. Accordingly, I respectfully dissent.

---

[10] That Zimmerman was not negligent per se does not mean he could not be found negligent for parking his unilluminated snowmobile in the path of other snowmobiles. The jury, however, found him not negligent.

¶ 31. The majority concludes that the term "operate" in Wis. Stat. § 350.09 does not include the actions of a driver sitting on a parked snowmobile after having stopped it and shut off the motor. The majority divides the definition of "operate" into two qualifying activities, but concludes that here, the driver is not exercising physical control over the speed or direction of the snowmobile, nor does the driver's conduct qualify as the manipulation or activation of the snowmobile's controls necessary to put it in motion. In drawing these conclusions, the majority seems to rely largely on one fact: the snowmobile's motor was shut off. Although I agree that the facts here indicate that the snowmobile's motor was not running at the time of the accident, I respectfully disagree that because the motor was turned off, the driver was not, under the facts presented, "operating" the snowmobile.

¶ 32. The majority interprets "operate" to require acts of a positive nature, such as having the motor running, so that the snowmobile is prepared for positive movement. I do not draw such a distinction. Based on the plain language of the definition in Wis. Stat. § 350.01(9r), "operate" requires the "exercise of physical control" or the "physical manipulation or activation of any of the controls." I agree with the court of appeals' conclusion in this case that a person's actions in stopping a snowmobile and turning off the motor fall within the definition of "operate." The driver is exercising physical control over the speed or direction of the snowmobile by bringing it to a stop. Moreover, the driver is physically manipulating the controls by turning off the engine. "The fact that such actions *stop* the snowmobile certainly renders those actions no less controlling of speed and direction than other actions that accelerate the snowmobile or change its course."

*Burg v. Cincinnati Cas. Ins. Co.*, 2001 WI App 241, ¶ 10, 248 Wis. 2d 145, 635 N.W.2d 622 (emphasis in original). Moreover, "[t]he fact that the manipulation *stopped* the snowmobile's motion certainly renders that action no less a manipulation of the controls necessary to put the snowmobile in motion." *Id.* at ¶ 11 (emphasis in original).

¶ 33. As the court of appeals noted, *Milwaukee County v. Proegler*, 95 Wis. 2d 614, 291 N.W.2d 608 (Ct. App. 1980), supports this interpretation of "operate." In *Proegler*, the court concluded that a drunk driver, sleeping in a parked car with the motor running, was operating the vehicle. 95 Wis. 2d at 628–629; *see also State v. Modory*, 204 Wis. 2d 538, 545, 555 N.W.2d 399 (Ct. App. 1996) (concluding that a drunk driver sitting in the driver's seat with engine running and wheels spinning, but stuck on a mound of dirt, was operating the vehicle). The majority here relies on *Proegler* for the proposition that "operate" requires that the motor be running. I respectfully disagree. Comparing the facts in *Proegler* to the facts in this case demonstrates how interpreting "operate" in terms of whether the motor is running relies on inappropriate distinctions. To me, a wide-awake person still sitting on a snowmobile after having stopped it and turned the motor off has more physical control over the speed or direction of the snowmobile than a drunk driver sleeping in a parked car with the motor running. *See Burg*, 2001 WI App 241, ¶ 12.

¶ 34. I find further support for this interpretation of "operate" by contrasting it with the definition of "drive." " 'Drive' means the exercise of physical control over the speed and direction of a motor vehicle *while it is in motion*." Wis. Stat. § 346.63(3)(a) (emphasis added). The majority's interpretation of "operate"—

51

which relies largely on the fact that the motor is running—seems more akin to this definition of "drive," rather than the definition of "operate." Although the majority does not require "motion" in its interpretation of "operate," the majority does require that the motor be running, and the difference seems minimal to me. Focusing on "the exercise of physical control" and "physical manipulation," in a broader sense of action—having either a positive or negative effect over the speed or direction of the snowmobile—makes sense to me in order to distinguish clearly between "operate" and "drive."

¶ 35. Furthermore, I conclude that interpreting "operate" in this way makes sense when applied to the facts here. The accident occurred in the middle, as opposed to the beginning or the end, of Zimmerman's snowmobiling trip. Granted, he was not driving at the time of the accident because the snowmobile was not in motion. He was, however, operating the snowmobile. He started operating the snowmobile when he left on his trip. At the time of the accident he was still operating his snowmobile when he was sitting on it after affirmatively manipulating the controls to stop it and turn off the motor. Moreover, he was physically controlling, albeit in a negative way, the snowmobile's speed or direction.

¶ 36. Finally, interpreting the term "operate" to include both positive and negative acts of physical control over the speed or direction seems logical, especially with respect to snowmobiles. In comparison to other motor vehicles, a snowmobile is small; therefore, it seems possible to manipulate the controls and have physical control over the speed or direction of the snowmobile without having the motor running. By requiring that the motor be running to "operate," the

majority would have to conclude that if a person is pushing a snowmobile, with the motor off, the person is not exercising physical control over the speed or direction of the snowmobile; to decide to the contrary, would violate the majority's interpretation of "operate."[1]

¶ 37. I conclude that "operate" is appropriately interpreted to include the exercise of physical control over the speed or direction of a snowmobile in both positive and negative ways. Applied here, Zimmerman was operating the snowmobile. He had recently brought the snowmobile to a stop and turned off the motor, which required the physical manipulation of the controls. Furthermore, at the time of the accident Zimmerman was physically controlling the snowmobile's speed and direction by restricting its movement. Accordingly, I would affirm the court of appeals' decision. For the reasons stated, therefore, I respectfully dissent.

¶ 38. I am authorized to state that Justices WILLIAM A. BABLITCH and DAVID T. PROSSER join this dissent.

---

[1] I also agree with the court of appeals' conclusion that the circuit court's—and now the majority's—interpretation of "operate" renders an ironic result under the facts of this case. *Burg v. Cincinnati Cas. Ins. Co.*, 2001 WI App 241, ¶ 12 n.8, 248 Wis. 2d 145, 635 N.W.2d 622. "[T]he operator of a snowmobile that is stopped with its motor off *would not* be negligent per se, while the operator of a snowmobile that is stopped with its motor on *would* be negligent per se, although he or she would be better able to quickly respond to a dangerous situation." *Id.* For this additional reason, therefore, I respectfully disagree with the majority's reliance on the fact that the motor must be running in order to "operate" a snowmobile.