COURT OF APPEALS
DECISION
DATED AND FILED

August 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP663-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CF243

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

SCOTT A. KRAUSE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Scott A. Krause appeals a judgment of conviction for fourth-offense operating a motor vehicle while intoxicated ("OWI") and

multiple bail jumping counts, as well as an order denying his postconviction motion. Krause raises two arguments on appeal. First, he claims that the circuit court judge demonstrated objective bias against the defense—both himself and especially his attorney—throughout and after the trial. Second, Krause contends that the circuit court erroneously exercised its discretion by overruling one of his objections during the State's closing argument. He argues that his objection was valid because the State misstated the law by claiming that certain of Krause's actions met the definition of what it means to "operate" a motor vehicle under WIS. STAT. § 346.63(3)(b) (2023-24).[1] Krause argues that both errors entitle him to a new trial. We reject Krause's arguments and affirm.

## BACKGROUND

¶2 On March 16, 2020, the State charged Krause with one count of OWI, as a fourth offense, as well as five counts of misdemeanor bail jumping. According to the criminal complaint,[2] dispatch received a call at 11:42 p.m. on March 15 from a person who said that his vehicle was nearly struck head-on by a vehicle that had crossed the center line on College Avenue in Appleton. Sergeant Christopher DeVries responded to the area and found the vehicle in a nearby parking lot. The vehicle was still running, and its headlights were still on when DeVries located it. In addition, the complaint stated that Krause was "slumped

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] We discuss the contents of the criminal complaint here—despite the fact that there is overlap with much of the trial testimony, and it is ultimately that testimony which matters to the judgment of conviction—because the allegations stated therein provide for most of the circuit court's understanding of the case going into trial. Given Krause's claims of bias against the circuit court judge, understanding the judge's knowledge of the case going into trial is relevant to our analysis of Krause's claims of bias.

down in the driver's seat with an unlit cigarette in his hands. The driver's side window was partially open, and Sgt. DeVries could hear the defendant snoring. He noted the odor of intoxicants coming from the defendant's vehicle."

¶3 Sergeant DeVries woke Krause, who "appeared lethargic and confused." Krause "did not appear to comprehend repeated instructions to exit his vehicle," but when he finally did exit, the vehicle began to roll backwards, leading DeVries to enter the vehicle and apply the parking brake. After further investigation, DeVries placed Krause under arrest for OWI. Krause refused to consent to a blood draw, so DeVries applied for and received a search warrant to conduct one. Eventual testing of Krause's blood showed his blood-alcohol content to be .356 g/100mL.

¶4 Krause pleaded no contest to two of the bail jumping counts, and the case proceeded to trial on the remaining counts beginning on October 19, 2021. Krause's theory of defense, as explained during defense counsel's opening argument, was that Krause was not driving his vehicle on March 15, 2020. Instead, Krause claimed that he had been on a date with a friend named Jamie Derrico and that she had been driving the vehicle at the time of the near accident. Krause explained that Derrico was unable to drive Krause's manual transmission vehicle well, and he contended that her inability to do so explained the poor driving that prompted the original call to police. He further claimed that while Derrico was attempting to drive him home, she became angry with him, stopped the car in a parking lot, and left on foot.

¶5 The State called two witnesses during the trial. The first, Charles Masin, described driving on Newberry Street in Appleton on the evening of March 15, 2020, when he saw an oncoming vehicle crossing the center line and nearly

strike his vehicle. Masin pulled over to avoid the oncoming car, then did a U-turn and followed it so that he could call police and report its location. The vehicle continued driving erratically, varying its speed and almost hitting multiple obstacles, until it pulled into a driveway at the end of a cul-de-sac in a commercial area. Masin waited in the cul-de-sac for a brief time, then followed the vehicle into the parking lot where the driveway led, where he found the vehicle, which was then stationary. He could not see inside the vehicle, and no one else seemed to be around. When deputies arrived on the scene, Masin identified himself as the caller and directed the deputies to the vehicle he had witnessed.

¶6    The State's second witness was Sergeant DeVries. DeVries described responding to the dispatch reporting Masin's call and encountering Krause in the vehicle Masin had identified. DeVries further explained that when he approached the vehicle, it was still running and its brake lights were on. DeVries waited for additional officers to arrive on the scene, which they eventually did. When Krause finally got out of the vehicle, it began to roll backwards toward DeVries's squad car, leading DeVries to partially enter the vehicle and apply the parking brake.

¶7    Sergeant DeVries also testified about his interactions with Krause, including the fact that Krause seemed confused, was unable to answer questions sensibly, and smelled strongly of alcohol. Devries eventually asked Krause if he should have been driving, to which he responded, "no, I should not." DeVries explained that after he read Krause the Informing the Accused form, Krause declined to submit to a blood test. DeVries also testified that Krause never denied driving the vehicle on the night of his arrest and that he did not see anyone on foot in the area of Krause's vehicle when he arrived on scene. Finally, the State played DeVries's body camera video of the stop and asked him to clarify a few points for

4

the jury about what the video showed, including when DeVries entered Krause's vehicle to stop it from rolling.

¶8  After the State rested, the defense called only one witness to testify, Derrico. Derrico testified that she had gone out to a restaurant on College Avenue with Krause on the evening of March 15, 2020. According to Derrico, at some point during the dinner, she took Krause's keys because she believed he was too drunk to drive himself home. Derrico further testified that once the pair left the restaurant, Krause became upset and started calling her offensive names. She became anxious because she could not drive Krause's stick-shift vehicle very well, and at some point, Krause began aggressively and repeatedly trying to grab the wheel and yelling about where she should go. At some point, Derrico said, she stopped the car, got out of it, "flipped off" Krause, and walked away. Krause elected not to testify in his own defense.

¶9  On the second day of trial, the parties delivered their closing arguments. During the State's closing, defense counsel made one objection relevant to the second issue in this appeal. That objection came when the State argued that regardless of whether Krause or Derrico had driven the vehicle to the parking lot, Krause had "operated" the vehicle by trying to grab the wheel while Derrico was driving and by having his foot on the brake while the car was in neutral. Specifically regarding the latter instance, the prosecutor told the jury that it "saw [Krause] operating a vehicle … on video," referring to the fact that Krause's foot was on the brake when DeVries approached. When the court asked the basis for the objection, defense counsel argued that "operation is defined as manipulating the ignition."

¶10 The circuit court overruled that objection, after which the State argued to the jury,

> You saw [Krause] operating the vehicle. The idea that the brake isn't one of the controls necessary to put the vehicle into motion is beyond ridiculous. His foot was on the brake. The vehicle was in neutral…. [T]he moment he pressed that brake pedal he was operating. Operating means the physical manipulation or activation of the controls necessary to put the vehicle into motion.

And later, the State additionally argued:

> When he grabs for that wheel and he causes that wheel to be moved by his physical actions, when the only thing stopping him from physically touching the wheel directly is Miss Derrico struggling to keep him off of her, he may not be in control of that vehicle but he is manipulating the controls physically.

¶11 After deliberation, the jury found Krause guilty of all charged offenses. Immediately following the trial, the circuit court proceeded to sentencing, withholding sentence and placing Krause on probation for a total of 36 months.

¶12 In January 2023, Krause filed a postconviction motion seeking a new trial. He first argued that "defense counsel was ineffective for failing to move for recusal and a mistrial" due to the circuit court judge's alleged bias. Krause also argued that the court erroneously exercised its discretion by overruling Krause's objection regarding the definition of "operation" during the State's closing argument.

6

¶13     The circuit court held a *Machner*[3] hearing.  After testimony from Krause's defense counsel, the circuit court denied Krause's motion for a new trial. Following extensive discussion, the court concluded that there was no objective bias present in the case and that it properly overruled Krause's objection during closing because having a foot on the brake while a car is running constitutes operation within the meaning of the OWI statutes.

¶14     Krause now appeals.  Additional facts will be provided below.

## DISCUSSION

### I.  Objective Bias by the Circuit Court Judge

¶15     The law presumes that a circuit court judge has acted fairly and impartially.  *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772.  A defendant may rebut this presumption by proving bias by a preponderance of the evidence.  *Id.*  Due process requires a neutral and detached judge—i.e., a fair decisionmaker.  *Id.*, ¶25; *State v. Washington*, 83 Wis. 2d 808, 833, 266 N.W.2d 597 (1978).

¶16     Wisconsin courts have applied both subjective and objective approaches when assessing whether due process has been violated by a biased judge.  *Herrmann*, 364 Wis. 2d 336, ¶26.  Here, Krause alleges only objective bias.  The objective bias analysis concerns both actual bias and the appearance of bias: "[w]hen the appearance of bias reveals a great risk of actual bias, the presumption of impartiality is rebutted, and a due process violation occurs."

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*Id.*, ¶46. To show actual bias, a "defendant must show that the [circuit court judge] in fact treated him [or her] unfairly." ***State v. McBride***, 187 Wis. 2d 409, 416, 523 N.W.2d 106 (Ct. App. 1994) (citation omitted). To show an unconstitutional appearance of bias, a defendant must show that a reasonable person could conclude that the average judge, with ordinary human tendencies and weaknesses, could not be trusted to remain neutral under the circumstances. ***Herrmann***, 364 Wis. 2d 336, ¶32 (citing ***State v. Gudgeon***, 2006 WI App 143, ¶24, 295 Wis. 2d 189, 720 N.W.2d 114). Krause contends that he has satisfied both the appearance of bias and actual bias tests for objective bias.

¶17 Relevant to the specific facts of this case, we further note that the presumption of judicial impartiality may be overcome due to a personal animus against a party, *see* ***Taylor v. Hayes***, 418 U.S. 488, 501-03 (1974), or even a personal animus against counsel for a party, *see* ***State v. Walberg***, 109 Wis. 2d 96, 108, 325 N.W.2d 687 (1982). Our supreme court has stated, however, that

> recusal based on bias toward the attorney is the exceptional situation. A mere showing of antagonism or of a strained relationship between counsel and the court is not sufficient to require disqualification. The judicial bias toward the attorney must be sufficiently severe as to reasonably call into question the court's impartiality toward the litigant.

***Walberg***, 109 Wis. 2d at 107. Furthermore, a

> court's expression of irritation with defense counsel for [his or her manner of litigating a case] …, standing alone, would not give the appearance of bias because such statements are generally within a [circuit] court's power to control the conduct of the proceedings in order to assure orderly and efficient administration of justice.

*Id.* at 107-08.

¶18 Krause claims that the circuit court judge demonstrated objective bias against him and especially his attorney throughout the trial and even into sentencing.[4] Because the judge often did so in front of the jury, Krause further argues that the bias—and, in particular, the judge's animus toward, and annoyance with, defense counsel—tainted the jury's view of him and the outcome of the trial. Krause's brief-in-chief identifies and analyzes numerous instances in support of his bias argument, all of which we consider in our analysis.[5]

¶19 Some of these comments occurred in front of the jury, which Krause contends reflected to the jury that the circuit court judge believed his defense counsel to be incompetent, that counsel was doing things incorrectly, that he was incorrect as to the law, and that he was causing unnecessary delays in the trial. Krause points to the following examples of these types of comments by the judge:

- During voir dire, the circuit court addressed defense counsel in front of the jury pool, cutting counsel off and requesting that he only ask "yes or no" questions, and adding, "We're trying to get at fair and impartial

---

[4] Relying on *State v. Marhal*, 172 Wis. 2d 491, 504-05, 493 N.W.2d 758 (Ct. App. 1992), a case involving a claim for judicial recusal during postconviction proceedings, the State argues that Krause forfeited his objective bias claim by not raising it contemporaneous to each of the circuit court's demonstrably biased statements or at some other point during the jury trial. Krause replies that *Marhal* is inapt and that other cases involving claims of judicial bias were addressed on appeal following the same approach Krause took here in the circuit court. We tend to agree with Krause. The bias claim was fully litigated in the postconviction proceedings, the relevant facts are undisputed, and only a question of law remains. In any event, to the extent there was any forfeiture of this argument, we exercise our discretion to overlook it. *See State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530 (noting that forfeiture is a rule of judicial administration that we may decline to apply in an appropriate case).

[5] To be clear, we have reviewed the entire trial record, including all of the trial transcripts. Accordingly, while we do not expressly reference every instance of alleged bias in this opinion, we have reviewed, and consider in our disposition of this appeal, all of the alleged instances of judicial bias contained therein, as amplified by Krause in his appellate briefs.

9

jurors." Later, after the jury was excused, the court explained its interruption, stating, "I bit my tongue for about ten minutes as you were, I think, [storytelling] and getting jurors to do things.... [B]ut I thought that it was just going too far … which is why I tried to gently interject and say, can we just ask proper voir dire questions."

- When defense counsel objected during the State's closing argument on the basis that the State was misstating the applicable law, and began to argue that "operation is defined as manipulating the ignition. There [are] no facts in evidence that he ever operated," the circuit court judge interrupted and said, "That's not—don't argue, just state basis. That's not how it's defined. I read to the jury how it's defined," and overruled the objection.[6]

- Also, during the State's rebuttal, defense counsel interrupted the State to express a stipulation. The circuit court judge stopped counsel, stating, "[J]ust don't—I didn't interrupt your closing, even though we probably should have. I'm just going to ask that you not interrupt. It's not your opportunity to clarify it."

Based on these and other instances, Krause argues that multiple responses by the circuit court to defense counsel's objections, interjections, or requests made in

---

[6] This alleged instance of objective bias forms the basis for Krause's second argument on appeal, which we address more fully below. As noted below, we conclude that the circuit court did not erroneously exercise its discretion by overruling the objection. Thus, to the extent that Krause's use of this instance to show bias depends on a contrary conclusion, we reject that argument. Still, we do consider the manner in which the court handled the objection as part of our objective bias analysis.

front of the jury must have given the jury the sense that defense counsel had done something wrong, or even that he was being unethical.

¶20 Krause further argues that his claim of judicial bias is bolstered by the repeated discussions between defense counsel and the circuit court outside the presence of the jury, such as during sidebars. Krause asserts that, during these interactions, the judge "placed [his] views on the record more plainly." Some of the interactions Krause notes include: the judge questioning counsel's manner of conducting voir dire and expressing that counsel could have completed his questioning of potential jurors in a quicker and more efficient manner; the judge disagreeing with defense counsel about what counsel had said during a sidebar, stating, "I'm not sure if it's an intentional or, you know, questionable, but that is fiction. And I usually don't say that to lawyers"; and the judge engaging in a lengthy commentary regarding defense counsel's closing argument and his objection to the State's rebuttal, which included a comment that counsel had mischaracterized the law but that the judge had not corrected what counsel had said because he "didn't want to make it look bad" for counsel or Krause.

¶21 While we agree with Krause that, in these exchanges, the judge expressed frustration or some dissatisfaction in his comments towards defense counsel, none of them plainly suggested that the judge was improperly biased, or that he prejudged any of the merits of Krause's case. Rather, these comments are instances when the judge more pointedly expressed his irritation with defense counsel for counsel's manner of litigating the case (including perceived incessant

requests for sidebars and objections),[7] which, as our supreme court has held, do not give the appearance of bias, given that the judge's comments are part of the court's "power to control the conduct of the proceedings in order to assure orderly and efficient administration of justice." *See* ***Walberg***, 109 Wis. 2d at 107-08. Moreover, it matters to our analysis that the jury was not privy to any of these exchanges, which is a fact that defense counsel should have understood while keeping his trial case on track.

¶22    Krause also claims that the circuit court judge continued to "display[] [his] general attitude of prejudgment toward Mr. Krause" by commenting that Krause should not be believed and by certain comments the judge made at sentencing. But the only instance, during the trial, of the judge allegedly expressing doubt over Krause's credibility occurred while discussing a sidebar, seemed to be an observation by the judge, and related to an insignificant factual dispute: that of how Krause responded to law enforcement the night of the charged offense when he refused to provide a blood sample and his recollection of his response, given that his blood-alcohol content was .356 at that time. Regarding the circuit court judge's comments at sentencing, we give them little weight in terms of their showing a great risk of actual bias by the judge over Krause and his case. Rather, much of what the court did at that point was consistent with it properly preparing for and then sentencing a defendant. Furthermore, Krause does not raise a separate claim that the circuit court acted

---

[7] We note that, other than the objection made during the State's closing, Krause makes no argument that the circuit court improperly overruled any of his objections or that he was denied a sidebar that was necessary or would have affected the outcome, other than the denial of a motion regarding sufficiency of the evidence that the court decided in front of the jury. We do not view that denial as overly concerning.

improperly or showed impermissible bias toward him during sentencing, such that he would be entitled to resentencing.[8]

¶23    On review of the totality of the record, we conclude that there are indeed indicia of potential objective bias by the circuit court judge toward Krause's counsel, and we view this as a close case on this issue. Most notably, we question why the court did not read to the jury the full standard jury instruction that contains the language explaining that the jury should disregard any impressions of the court's opinion as to guilt or innocence. *See* WIS JI—CRIMINAL 100 (2000).[9]    And, as even the State admits, the record reflects "the circuit court's occasional exasperation with defense counsel's approach to Krause's case," that "the circuit court did not much care for defense counsel's approach to the case or was irritated by counsel's frequent delays and disruptions

---

[8] A final category of judicial bias that Krause appears to advance relates to the circuit court's overall conduct of the trial. Most notable, according to Krause, was the manner by which the judge curtailed defense counsel's ability to try the case. We view this argument as mostly derivative of his other arguments of bias by the judge. Furthermore, other than his challenge to the court's ruling on his one objection during the State's closing argument, Krause does not raise any independent challenge on appeal to the court's overall trial management or argue that he was denied his right to present a defense.

[9] Specifically, the circuit court omitted the following language from WIS JI—CRIMINAL 100 (2000):

> If any member of the jury has an impression of my opinion as to whether the defendant is guilty or not guilty, disregard that impression entirely and decide the issues of fact solely as you view the evidence. You, the jury, are the sole judges of the facts, and the court is the judge of the law only.

The only discussion of WIS JI—CRIMINAL 100 during the jury instruction conference was the circuit court stating: "[S]tarting on Page 1, instruction 100, I think the only change I made was I put up on the second line five questions. If you have any issues or objections, just voice it right at the time that we're talking about it." The record does not reflect any objection by Krause to the version of WIS JI—CRIMINAL 100 that the court ultimately used.

13

in the case," and that this was "a trial that was often contentious between defense counsel and the court."

¶24     Still, we conclude that Krause has failed to overcome the presumption of impartiality.  He has failed to prove actual bias because he has failed to show that the circuit court judge did, in fact, treat him unfairly.  *See McBride*, 187 Wis. 2d at 416.  Regarding whether there was a great risk of actual bias, the judge's perceived dislike of Krause's counsel does not establish that the judge was biased against Krause unless there is a showing that the judge's comments and conduct toward counsel adversely affected Krause's interests.  *See Walberg*, 109 Wis. 2d at 106-07.  On this record, Krause has failed to make such a showing, and he therefore is not entitled to a new trial.

¶25     In the main, the judge's comments toward defense counsel were admonitions regarding, and frustration with, how the attorney was conducting the case from a "best practices" perspective.  In short, we agree with the State that the record reflects that "the circuit court [judge] did not much care for defense counsel's approach to the case."  Upon our review of the entire record, it appears that the judge had a reasonable basis for perceiving counsel's conduct during the trial as odd, if not sometimes problematic.  In other words, we fail to see that any of the comments or conversations of which Krause complains were without reasonable basis or were gratuitous and unduly negative under the circumstances in which they occurred.  Generally speaking, it is appropriate for a court to instruct an attorney on the court's expectations for practitioners, particularly, as here, after several instances of counsel failing to meet those expectations resulted in a trial

14

running longer than the court expected.[10] The fact of these exchanges happening and the reasons for them do little to show that Krause is entitled to a new trial on the basis of objective bias.

¶26 The issue, of course, is with *how* the judge chose to affirmatively comment about his observations and opinions, and what those comments would reflect in terms of the fairness of the trial, especially in relation to the jury. We cannot conclude that they reflected a clear bias against the ultimate merits of Krause's case, especially in terms of the instances that the jury observed. Other than at sentencing (which, as we explained above, is a materially different, posttrial context) and one comment expressing skepticism over Krause's recollection of his response to law enforcement at a time when his blood-alcohol content was .356, Krause has shown nothing to suggest the judge held any animus toward *him* personally at trial.[11]

¶27 While Krause has shown that the circuit court judge expressed a repeated and sometimes strong dissatisfaction with defense counsel's approach to the trial, in the end Krause fails to show just how the judge's comments and conduct adversely affected his interests at trial. *See **Walberg***, 109 Wis. 2d at 106-07. We conclude that Krause has failed his burden to establish that the judge

---

[10] At a pretrial conference, both the State and defense counsel agreed that the trial would last no longer than two days, but they also believed that there was a possibility that the trial could be completed in one day.

[11] Moreover, contrary to Krause's assertion, the judge never actually accused defense counsel of doing something that was unethical, and defense counsel's feelings to the contrary are not controlling. Indeed, even Krause, in his appellate briefing, only asserts that the "[t]he circuit court seemed *to imply* that defense counsel had violated the rules of ethics." (Emphasis added.) At most, the judge suggested he was unsure whether counsel was being unethical, but expressly told counsel, "If I did [think counsel was being unethical], I'd say it directly."

was objectively biased against the defense in this case, either actually so or by the appearance of bias.

## II. Krause's Objection to the State's Closing Argument

¶28 Krause next challenges (1) the prosecutor's statements during closing argument that, even if the jury found that Derrico drove from the restaurant to the parking lot, the evidence still showed that Krause had "operated" the motor vehicle in which he was found on the night at issue; and (2) relatedly, the circuit court's overruling of Krause's objection to the same. Krause argues that the prosecutor misstated the law by telling the jury that Krause "operated" the vehicle, as that term is defined in WIS. STAT. § 346.63(3)(b), either by having his foot on the brake pedal while the vehicle was still running or by attempting to grab the steering wheel while Derrico was driving the vehicle. We reject Krause's argument.

¶29 While Krause's challenge is technically to the circuit court's exercise of its discretion in overruling his objection, Krause couches his argument as an error of law.[12] Namely, he claims that both the State and the circuit court

---

[12] Citing certain cases, the State argues that Krause forfeited his appellate argument regarding the State's closing argument by failing to move for a mistrial in addition to lodging an objection. Given prior cases addressing the same issue as this case—that is, what it means to "operate" a motor vehicle, *see, e.g.*, **Village of Cross Plains v. Haanstad**, 2006 WI 16, 288 Wis. 2d 573, 709 N.W.2d 447; **City of Beloit v. Herbst**, No. 2010AP2197, unpublished slip op. (WI App Jan. 12, 2012)—we question the State's argument in this regard, wondering if the State is taking too broad of a view of the rule found in the cases it cites.

Here, Krause's argument is not really about "misconduct" by the State during its closing argument but rather whether the failure to sustain Krause's objection undermined the validity of the jury's verdict in the first instance by allowing it to rely on a mischaracterization of governing law. In any event, and for the purposes of this opinion, we will reach the merits of Krause's argument on this issue.

(continued)

misapplied WIS. STAT. § 346.63(3)(b) by allowing the jury to believe that he could be guilty of operating a motor vehicle under certain facts testified to during the trial. When, as here, a discretionary decision is based on the circuit court's resolution of questions of law, we review those determinations de novo. *Lenticular Europe, LLC v. Cunnally*, 2005 WI App 33, ¶9, 279 Wis. 2d 385, 693 N.W.2d 302.

¶30 Certain additional standards, however, govern this particular context of reviewing a claim of prosecutorial misstatements of the law during closing argument. As with all trial counsel, a prosecutor is allowed considerable latitude during closing arguments, and the circuit court has discretion to determine the propriety of a prosecutor's statements to the jury. *See State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979); *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992). However, "[c]ounsel may not make statements of law which are of dubious correctness." *State v. Lenarchick*, 74 Wis. 2d 425, 459, 247 N.W.2d 80 (1976). Where counsel's inaccurate statements likely affected the jury's verdict, reversal is appropriate where the circuit court erroneously exercised its discretion. *See id.* at 457-58.

¶31 The statutory provisions at issue here are WIS. STAT. § 346.63 generally—which prohibits people from driving or operating a motor vehicle while under the influence of an intoxicant—and § 346.63(3)(b) specifically—which defines the term "operate," as applied to that OWI statute, as "the physical manipulation or activation of any of the controls of a motor vehicle necessary to

---

An unpublished opinion that is authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

put it in motion." Moreover, the State's closing argument must be reviewed in the context of the entire trial, including the jury instructions the circuit court provided. *See Wolff*, 171 Wis. 2d at 168. Here, the jury was accurately instructed with the verbatim definition used in § 346.63(3)(b). *See* WIS JI—CRIMINAL 2668 (2015).

¶32 We conclude that neither the prosecutor nor the circuit court misstated the law in relation to the former's closing argument and the latter's ruling on Krause's objection and instructions to the jury. In particular, neither of them used an incorrect definition of the term "operate" as it is defined in WIS. STAT. § 346.63(3)(b) and used throughout that statutory section. At the very least, both aspects of the State's closing argument at issue were not so "dubious" in their characterization of the governing law so as to warrant a new trial. *See Lenarchick*, 74 Wis. 2d at 459. Accordingly, the jury had before it the proper definition of "operating" a vehicle, and it was able to apply it in this case.

¶33 A person's application of the brake pedal to a vehicle that is running—even while it is in neutral or idling—readily appears to meet the statutory definition of "operating" the vehicle. The facts in this case show precisely that it was Krause's pushing down of the brake pedal which kept—that is, "controlled"—the vehicle from otherwise being in motion. Namely, once he released pressure on the pedal, the vehicle began moving backwards. These circumstances are materially different from those in the cases on which Krause relies. *Cf. Village of Cross Plains v. Haanstad*, 2006 WI 16, ¶¶16, 24, 288 Wis. 2d 573, 709 N.W.2d 447 (concluding that because the defendant had not touched any of the vehicle's controls, including "the brake," she had not operated the vehicle as defined in WIS. STAT. § 346.63(3)(b)); *Burg ex rel. Weichert v. Cincinnati Cas. Ins. Co.*, 2002 WI 76, ¶¶20 n.6, 22, 254 Wis. 2d 36, 645 N.W.2d 880 (concluding, after comparing the statute for "operating" a snowmobile with

18

the meaning provided in § 346.63(3)(b), that the defendant was not "operating" his snowmobile because "[s]itting on a parked snowmobile *with its engine off* is not, without more, the 'manipulation or activation' of the snowmobile's controls necessary to put it in motion" (emphasis added)). Accordingly, use of a brake pedal while a vehicle is running seems to fit within the definition of operation in the OWI statute.

¶34 Krause fares only marginally better with his argument regarding his grabbing for the steering wheel while Derrico was driving. The State's argument, during its closing, was that Krause may have operated the vehicle by grabbing at the steering wheel—which is plainly a "control" of a motor vehicle necessary to put it into motion—while the vehicle was already in motion on a public roadway, thereby "physically manipulati[ng]" the driver's own operation of the vehicle. Again, this represents a materially different fact pattern than that in *City of Beloit v. Herbst*, No. 2010AP2197, unpublished slip op., ¶¶1-2 (WI App Jan. 12, 2012), where this court held that the circuit court erred by allowing the city to argue to the jury that a defendant's simple touching of a steering wheel constitutes "operat[ing]" under WIS. STAT. § 346.63, even though the vehicle may have been running but certainly was *not* in motion, as here.

¶35 In all, it can reasonably be argued that Krause "operated" the vehicle within the meaning of the OWI statute by either of the foregoing actions. Furthermore, it would certainly make sense for the OWI statutes to prohibit such acts by intoxicated persons. While we do not know which of the two versions the jury relied on to convict Krause, the jury was accurately instructed on the meaning of "operating" a motor vehicle, as well as being told that counsel's arguments are not evidence and not binding on the jury. Under the circumstances of this case, the jury could consider all the evidence and the correct definition of "operate" that

it was provided and come to its own conclusion, with defense counsel being free to argue that the State's view, as applied to the facts, was wrong.

¶36 Indeed, Krause's counsel did so. In his closing, counsel argued that the State's theory that Krause's grabbing for the wheel while Derrico was driving the vehicle constituted him driving or operating did not "make sense," albeit he focused on the definition of "driving," which involves "the exercise of physical control," *see* WIS. STAT. § 346.63(3)(a), and seemed to ignore that "operating" includes physical "manipulation," not just "physical control." As to the State's argument related to the brake pedal, counsel did properly refer to "physical manipulation." But he still argued only that Krause's depression and then release of the brake pedal did not meet the definition of operating because the brake "is not necessary to put a car into motion."[13] As we explained above, the jury was well within reason to reject both of these arguments, especially, again, given that both of the parties and the circuit court itself properly instructed the jury on the statutory meaning of "operating" a motor vehicle.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[13] In its rebuttal, the State revisited the issues of Krause's use of the brake pedal and grabbing for the steering wheel.

20